## CLARK v. TAYLOR & McKINLEY ET AL.

1. **Fraud:** CONCEALMENT OF FACTS: RELEASE OF RETIRING PARTNER FROM FIRM OBLIGATION. T. & M., a firm of grain dealers, upon the promise that they would take no risks in options, procured credit to the extent of $6,000 from plaintiff; but they violated such promise and lost heavily in options. T. was about to withdraw from the business and turn over his interest therein, and in the firm property, to M., (which was afterwards done,) when, by concealing their losses, they induced plaintiff to release T. from $2,000 of their debt to him, and to look wholly to M. therefor. *Held* that the release was procured by fraud, and could not be enforced.

2. **Pleading:** FRAUD: OBJECTION TOO LATE. Although the plea of fraud in this case (see opinion) was not artistically drawn, and might possibly have been successfully assailed by demurrer, yet, not having been so assailed, it was sufficient to justify the admission of evidence from which the court was authorized to find fraud; and it is too late in this court to ask that the judgment be reversed on account of the informality of the plea.

*Appeal from Jasper District Court.*

WEDNESDAY, APRIL 7.

THE plaintiff is a banker, and he seeks by this action to recover of defendants a balance alleged to be due upon a bank account against the defendants. There was a trial to the court without a jury, and a judgment for the plaintiff. Defendants appeal.

*Winslow & Varnum*, for appellants.

*Alanson Clark*, for appellee.

ROTHROCK, J.—I. The district court made a finding of facts in the case, which we here copy:

"(1) That at about the middle of March, 1884, and for some time prior thereto, the defendants Robert McKinley and George W. Taylor were doing business as partners at Newton, Iowa, under the firm name of Taylor & McKinley, and in the business of buying grain at said place; that during that time

*1. FRAUD: concealment of facts: release of retiring partner from firm obligation.*

plaintiff was engaged in the business of banking at said place, and during said time defendants, in their firm name, kept an account at plaintiff's bank, and were permitted to make overdrafts from time to time; the money thus used being principally used in buying grain, and being usually repaid, in whole or in part, by the proceeds of the sale of such grain in Chicago.

"(2)    That about the middle of March, 1884, the defendant Robert McKinley informed the plaintiff that a dissolution of the firm of Taylor & McKinley was being talked of between the partners, and asked plaintiff if he would carry him (McKinley) for two thousand dollars, if the overdraft (which then amounted to about six thousand dollars) was reduced to two thousand dollars, and the firm property turned over to him, (McKinley) and plaintiff answered that he would, or that it would be all right.

"(3)    That defendant Taylor also talked with plaintiff about what the partners were going to do, and plaintiff informed Taylor of what McKinley had said, as above stated, and Taylor then requested plaintiff to take a mortgage on the firm property when it should be turned over to McKinley, but plaintiff did not promise or agree to do so.

"(4)    That thereafter, and about the ninth day of April, 1884, Taylor conveyed and transferred to McKinley the partnership property, and left the deeds or instruments of transfer at plaintiff's bank with the cashier, plaintiff's son, for McKinley, and they were soon thereafter taken therefrom by McKinley.

"(5)    That the overdraft had not yet been reduced to $2,000, and before it was so reduced, and about the ———— day of April, 1884, plaintiff heard it rumored that defendant's had been dealing in grain on the board of trade, in Chicago, and had thereby lost large sums of money; and, upon the attention of defendants being called to such rumor by plaintiff, they made no denial of the correctness of the rumor; and, as a matter of fact, either the firm or, McKinley with

the knowledge of Taylor, had been dealing in options in grain on the board of trade in Chicago at the time of the talk with plaintiff about reducing the overdraft to $2,000, and there was an actual loss to McKinley thereby of from one to two thousand dollars; all of which was concealed from plaintiff, and not known to him until after the transfer to McKinley of the firm property.

"(6)   That the business formerly conducted by said firm was, after said transfer of the firm property to McKinley, carried on by him alone, and the dealings with plaintiff in relation thereto kept or entered in his individual account with plaintiff's bank; but it does not appear from the evidence that the balance of the amount due from the firm was ever transferred to this individual account; and the partnership was dissolved as between the partners on or about April 1, A. D. 1884.

"(7)   That plaintiff never, at any time, expressly agreed or promised to release defendant Taylor, or to carry defendant McKinley, for the identical $2,000 that might be remaining due from the firm after the overdraft was reduced to that amount, but it is a fair inference from all the evidence, and is so found as a fact, that it was understood between all the parties that plaintiff would carry defendant McKinley for such $2,000, the same as he had before been carrying the firm, as soon as the overdraft was reduced to that amount.

"(8)   That defendant Taylor, at the time he transferred the partnership property to McKinley, did not understand or expect that he was or would be thereby released from all liability for the remainder of the partnership indebtedness, but did expect that plaintiff would, by mortgage or otherwise, secure the $2,000 remainder on said partnership property to the extent that the same could be thus secured, but plaintiff never expressly agreed to so secure the same.

"(9)   That the value of said partnership property was talked over between plaintiff and McKinley during the time they were talking of reducing the firm account to $2,000,

and having such transfer made; but the evidence does not show what estimate was placed upon it, nor what its actual value was; but does show, and it is found as a fact, that all of said property transferred to McKinley was still owned by him free from incumbrance at the time of the trial of this case, except grain, which was sold and proceeds applied towards reducing said 2,000, and except about one-half of the corn-crib, which one-half was of the value of $200.

"(9½) That the balance due on said firm account was reduced to $1,946.85 by the first day of July, 1884, and there was that amount due plaintiff thereon at the time, and no further payments have been made since that time.

"(10) That at the time said partnership property was transferred the balance of said firm account had not been reduced to $2,000, but to very nearly that amount, and no further payments were made thereon by defendant Taylor after said transfer.

"(11) That after said transfer, and after learning that said firm or McKinley had been dealing in options on the board of trade, as before stated, plaintiff refused to further carry McKinley for said balance, and requested payment or security therefor from defendant Taylor, which was refused by him.

"(12) That it had been the practice or custom while the firm was doing business to give promissory notes from time to time for the amount of overdraft, or parts thereof, which notes provided for the payment of interest at ten per cent per annum, and interest was paid on account; for at that sale, and after the transfer of said property, and after the firm ceased to do business, and on or about the fifth day of August, 1884, the following instrument of writing was signed by the defendant McKinley, alone, to-wit:

"'It is hereby stipulated and agreed that the amount due the banking-house of D. L. Clark, from Taylor & McKinley, on the overdraft of said Taylor & McKinley, July 1, 1884,

is two thousand and seventy-two and 25-100 dollars, ($2,072 25-100,) and that said overdraft is drawing interest at the rate of ten per cent per annum. This statement is signed in my own name, and not in the firm name of Taylor & McKinley, because I am not certain that I have a right to sign the firm name to the same.          R. McKINLEY.

"'*August* 5, 1884.'

" And there was no other or different agreement in writing to pay any particular rate of interest on such overdrafts.

"(13)   That it was agreed between the partners, about the time plaintiff agreed to carry McKinley for the $2,000, or soon thereafter, that Taylor should pay $2,000 on the then amount of the overdraft, and McKinley pay the balance, to reduce it to the $2,000, and McKinley to assume the payment of the remaining $2,000, and Taylor to transfer to McKinley the partnership property, consisting of elevator, cribs, a town lot and some grain; and plaintiff knew that substantially this arrangement was being talked of, but did not know it had been agreed upon until after the transfer of said property."

It will be seen by the foregoing facts that the controversy was whether George W. Taylor was released from the debt of the partnership to the plaintiff. The court found as a conclusion of law that he was not discharged from liability. The findings of fact are fully supported by the evidence, and, without further comment, we may here say that the objections taken by appellants to certain evidence introduced by the plaintiff do not appear to us to be well taken. We think the rulings of the court pending the trial were correct.

II.   The petition in the case was an ordinary petition upon a banker's account. The answer set up the defense 2. PLEADING: that Taylor had been discharged from all liability fraud: objection too late. upon the account. The defendant, by way of reply to said defense, set up, in substance, that he did agree with McKinley to carry him for $2,000; that at that time

the firm of Taylor & McKinley was reported to be financially good, solvent, and perfectly responsible for their debts; and that plaintiff did say to McKinley that he would carry him for $2,000; that shortly thereafter the defendants Taylor & McKinley, and the individuals thereof, lost heavily in option dealings, in an amount larger than the debt now due plaintiff, and plaintiff thereupon declined and refused to carry McKinley for the debt, or any part thereof; that Taylor well knew that McKinley was financially embarrassed, and had lost large sums of money in option dealings, and concealed the same from the plaintiff; and that the arrangement to carry McKinley was "ready for a denial by plaintiff, and especially so upon the discovery that the said McKinley had only a fictitious credit and standing, and had in fact lost a large amount of his property in option deals." There was an amended reply, which set up that the contract of release set up in the answer was without consideration, and within the statute of frauds. But, as we think the cause must be determined without a consideration of these questions, they need not be further referred to.

In our opinion, the judgment of the court may well be approved upon the ground that the release of Taylor was a fraud upon the plaintiff, and therefore void. The reply is vigorously assailed by counsel for the defendants as not being a good plea in fraud. It is true that it does not, in terms, aver that plaintiff was induced to agree to carry McKinley for the $2,000 by reason of the concealment of the fact that he and Taylor had been dealing in options, and had suffered loss thereby; but it does charge that Taylor concealed that fact from the plaintiff, and that the firm was then supposed to be financially sound, and that whatever promise he made was to extend credit subject to be recalled upon discovery of the fact that McKinley had lost largely in option deals. Now, it may be admitted that the plea of fraud is not artistically drawn, and yet, after verdict and judgment, and without any motion in arrest, we are inclined to think that it would

Clark v. Taylor & McKinley et al.

be rather a rigid rule to hold that the judgment should be reversed on this ground. If the question before us was upon a ruling upon a demurrer to the reply, a different ruling might be required. It is true, defendants objected to the evidence as to the option deals, but, in the absence of some attack upon the reply, we think the evidence was properly admitted upon the ground that, while the direct charge is not made that but for the concealment plaintiff would not' have promised to carry McKinley, yet that fact is as plainly pleaded as it could be without a direct charge in terms.

Having reached this conclusion, there is little more necessary to be said. These defendants do not pretend that any bank would knowingly carry any dealer in produce who engages in gambling transactions upon the Chicago Board of Trade, or elsewhere; and having engaged in that business, and lost thereby, and having concealed that fact from the plaintiff, they cannot be allowed to claim that the plaintiff is bound to comply with a promise to release one of them in ignorance of their losses thus sustained. They obtained large advances from the plaintiff in the belief on his part that they were engaged in the legitimate business of purchasing grain and moving it to market; and they did this, as the evidence shows, in direct violation of an agreement between them and the plaintiff, when he gave them credit, that they were not to take any risks in options. ˉ

AFFIRMED.