Hurlbut, J.
This appeal is here from the district court of the City and County of Denver, by transfer from the supreme court. Plaintiff (appellee) commenced an action against defendants (appellants), founded upon fraud and deceit practiced upon plaintiff by defendants as alleged, in the sale and purchase of the capital stock of the Longs Peak Coal & Coke Company, a Wyoming corporation. Said company, at the time of such purchase, and for a considerable period prior thereto, was in the possession of and operating certain coal mines in Bouldeir County, Colorado, under lease from the owners thereof.
The transaction was consummated on May 3rd, 1905, by the execution of a written contract signed by plaintiff and defendants. The complaint alleged that plaintiff was without any experience whatso *433 ever concerning coal mines and their operation; that he was in search of a business opportunity; that in answer to an advertisement in the Denver Post he wrote defendant Robinson and received two letters from him, dated April 10th and 13th (1905) respectively, therein stating’ that he knew of a good paying coal mine enterprise, stating at considerable length the facts and conditions upon which stock of the company could be purchased and possession of the mine obtained; that he was prepared to invest $2,000.00 in the enterprise and was looking for a good straightforward business man to invest an equal amount, which together would give them a controlling interest; that he was thoroughly familiar with the coal industry, and prophesying .fabulous profits and rich returns for both of them from such investment.
The complaint further alleged that many false and fraudulent representations were made to plaintiff by defendants and one Berryman, concerning the physical condition of the mine, the amount of its production, the profits arising therefrom, its capacity for tonnage, its machinery and equipment, and other matters of similar import; that such representations and Robinson’s representation that he was thoroughly familiar with coal mining operations and would invest an equal amount of money with him and become his full partner, were the sole inducements that led him into investing in the enterprise and paying* $2,000.00 as a first payment; that plaintiff was grossly deceived and defrauded by defendants in this, to-wit, that the first payment to he made in cash to the owner of the stock (defendant Seaver) was $4,000.00, of which sum he was to pay *434 $2,000.00 and defendant Robinson $2,000.00; that at the time be gave Ms check to Seaver for $2,000.00 defendant Robinson was present and also gave his check, payable to Seaver, for an equal amount; that the check of Robinson was fraudulent and worthless ; that he had no funds in the bank upon which it was drawn; that Seaver, participating in the deception, took Robinson’s cheek at the same time he received that of plaintiff, and by his actions and statements led plaintiff to believe that Robinson was his full partner, and had paid an equal amount with Mm to become such; that afterwards said Seaver, through Ms agent or representative, Berryman,- returned to Robinson the check of $2,000.00 previously received from him (which Robinson destroyed), and at the same time delivered to Robinson his personal check payable to Robinson’s order for $1,000.00, being one-half of the $2,000.00 previously paid to Seaver by plaintiff. ,
The complaint and reply alleged that at the time plaintiff signed the accord and satisfaction agreement of January 4th, 1906, mentioned in the answer, he had no knowledge of the fraudulent acts and deceptions of Seaver and Robinson as next herein-before referred to.
The third defense in defendants’ answer pleaded in bar a written accord and satisfaction agreement dated January 4th, 1906, signed by plaintiff of the first part and defendants and one Hammond of the second part, wherein the parties thereto purported to cancel and annul all previous agreements between them, and to acknowledge full satisfaction of all claims or demands which at the time existed between them. The case was tried to a jury and verdict *435 returned in favor of plaintiff for $2,000.00, upon which judgment was rendered.
So far as the evidence is concerned it would be a loss of time to comment at length thereon. The abstract of record contains one hundred and sixty-one pages of testimony, and every issue of fact is vigorously affirmed, and denied, by the testimony of the respective parties, to a degree which almost challenges the wisdom or usefulness of an oath in legal proceedings. The established rule in this jurisdiction, concerning controverted facts in the trial of cases, relieves us of the duty of weighing the evidence. The verdict was in favor of plaintiff and was supported by sufficient evidence.. We think the jury were properly and. carefully charged by the court as to the law and their duty in deliberating upon the issues and verdict.
The delivery of the check by Eobinson to Seaver in the presence of Snider, and its receipt and retention for the time by Seaver, was evidently for the purpose and had the effect of deceiving plaintiff and thereby inducing him to enter into an agreement of purchase and to part with $2,000,00 of his own money, which he would not have done but for such acts and the representations made by said Eobinson and Seaver preceding and accompanying the delivery of the check. These acts constituted fraud, for which Snider could rescind the contract.
A number of legal propositions pertinent to this case have been well argued by counsel both at the oral hearing and in their briefs, but as we view this case only one question is necessary to be decided in order to determine this appeal, and that is as to the force and effect of the accord agreement *436 above mentioned. We are satisfied that at the time plaintiff signed this agreement he was fully informed as to the truth or falsity of all the alleged fraudulent representations made by either of the defendants concerning the physical condition of the mine, its profitable operation, and every other fact in issue, save and except the transactions surrounding the payment by plaintiff of the $2,000.00 and the sayings and actions of defendants at that time. If plaintiff, at the time he signed the accord agreement, did not know of the alleged fraud practiced upon him by defendants in the $2,000.00 check transaction, it cannot be said that he then had that transaction in mind, consequently would not be bound by the agreement as to any claim or demand he might have had growing out of such transaction. This accord agreement shows that plaintiff Snider divested himself of all stock in said company which he owned, gave up the entire right of management or control of the coal mine, resigned from the board of directors, and thereby disposed of every right and property he had previously 'acquired by any dealings or negotiations by, through or with defendants or either of them. So far as the agreement is concerned, he retained no interest whatever in the stock, assets or business, of the company, and had no financial interest in its future operations, and his consideration for thus severing all connections with said company was the promise of Seaver to pay all debts then existing against the company, and to pay a certain mortgage then standing of record against the company.
“A release ordinarily cover's only such claims as are within the contemplation of the parties, conse *437 quently a demand of which the parties were ignorant when the release was given is not as a rule embraced therein.” 34 Cyc. 1092. The release or accord agreement mentioned seemed to be full enough in every respect to have barred any future action as between the parties thereto, founded upon any claim or demand which existed between them at the time of signing the same, provided such claim or demand was then known to exist by the contracting parties. The case of Guldager v. Rockwell, 14 Colo. 459, cited by appellant’s counsel, seems to be authority against appellant’s contention. In that case plaintiff sought to recover damages for the death of her husband. She had previously signed, an accord and satisfaction agreement somewhat similar to the one here considered, which agreement was pleaded by defendant Rockwell in bar of plaintiff’s action. The court held the plea to be good. We notice, however, that there is a marked difference between the facts in the two cases. We extract the following excerpt from that case, referring to plaintiff’s testimony: “I made no claim of requital on account of the death of my husband; did not mention it be: canse I did not want to; did not consult anybody in regard to it until I returned to Denver. I knew at the time that I had a claim against him (defendant) and when I made this statement and signed the receipt I expected to bring this suit.” The court in that case says: ‘ ‘ The paper in question, being a contract entered into by plaintiff deliberately and with full knowledge of her rights, being sufficient in its terms to comprehend the claim in question, having been entered into for the purpose of settling all matters of difference, and being so fully under *438 stood by both parties, it is clear that its effect cannot be avoided except upon the ground of fraud or mistake.” It will be seen that plaintiff, at the time she signed the release, knew she had a claim, against Rockivell for the death of her husband. In the case at bar the evidence shows without contradiction that at the time plaintiff signed the accord and satisfaction agreement he had no knowledge of the fraud and deceit which had been practiced upon him by defendants in and concerning the $2,000.00 check transaction above referred to.
The views above expressed appear to be in harmony with the following cases: Clark v. Taylor et al., 68 Iowa 519; Grumley v. Webb, 44 Mo. 444; Church Cooperage Co. et al. v. Pinkney et al., 163 Fed. 653; The Estate of John F. Cottrell, Philadelphia, Pa. 93.
Appellants’ counsel complain of the refusal of the court to give defendants’ tendered instruction number 10. We do not think that instruction was a proper statement of the law as applied to the evidence in the ease. The same may be said of defendants’ tendered instructions number 19 and 13. Defendants were not prejudiced by the court’s refusal to give the instructions as tendered, for the reason that instructions number 2, 6, 7 and 13, given by the court, contained the substance of the instructions refused, so far as warranted by law.
It appearing that plaintiff, at the time he signed the accord and satisfaction agreement, had no knowledge of the deception practiced upon him by defendants in the matter of the $2,000.00 check transaction heretofore referred to, and had no knowledge that Eobinson was not his full partner in the stock deal, *439 he was not bound by said accord agreement as to any claim or demand he had against defendants or either of them arising out of said check transaction.
Discovering no reversible error in the record, the judgment will be affirmed.

Judgment Affirmed.