### No. 9073.

### Colorado Springs & Interurban Railway Company v. Huntling.

1. Fraud—*Evidence Of*, examined and held entirely lacking in the clearness and certainty required by the rules.

2. Release—*Construed.* A release of "all claims, which I have, or can, or may have by reason of" a certain accident specified, *held* to have no reference to any particular injury.

3. *Ratification—Elements Of.* Ratification must be predicated upon an actual existing purpose to approve the act; mere delay does not take away the right to rescind a contract obtained by misrepresentation, nor, so long as, no election being made, the party is entitled to determine it either way.

But delay may be so great as, under all the circumstances, to be a decision. An election is sometimes more conclusively evidenced by conduct than by words.

Plaintiff was injured on the 25th of August, 1912, by an accident which she attributed to the misconduct of defendant. In November following she executed a release to defendant, and accepted his check for $900.00. Late in November she left the hospital where she had been under treatment, and in the following March deposited the check, against which she checked until the amount was exhausted. Held a clear case of ratification under release.

*Error to El Paso District Court, Hon. John E. Little, Judge.*

Messrs. CHINN & STRICKLER, Mr. J. ALFRED RITTER, JR., and Mr. ROBERT G. ARGO, for plaintiff in error.

Messrs. ORR, ROBINETT & MASON, Mr. LOUIS W. CUNNINGHAM and Mr. CLARENCE M. HAWKINS, for defendant in error.

THIS was an action for damages brought by Jennie M. Huntling against The Colorado Springs & Interurban Railway Company for injuries sustained in a street railway accident in the city of Colorado Springs. The parties are hereinafter designated as in the trial court.

The accident occurred August 25, 1912. Plaintiff was immediately removed from the place of her injury to a nearby drug store, where she was attended by Dr. Hanford, the company's physician and surgeon, under whose directions she was taken to the place of her temporary residence, and two days later transferred to Bethel Hospital, stopping on the way for an X-ray of her injuries at the office of Dr. Brown. Plaintiff was 49 years old and her former home was in Beatrice, Nebraska. About a week prior to the accident she came to Colorado, accompanied by her brother and other relatives, on a sight-seeing expedition. These relatives remained with her until about a week after the accident. For eighteen years her occupation had been that of clerk in a dry goods store. Her average wages for some time prior to her injury had been $50 per month. Up to that time her health had always been good. Since then it has been broken, and her crippled condition, resulting from the accident, required her to use crutches down to the date of the trial. Dr. McClenahan was called in by Dr. Hanford, and examined the plaintiff on the evening following the injury. After the plaintiff had been for some time in the hospital, she consulted with Judge Orr, one of her attorneys in the trial in the court below, and in this court. She says she was not satisfied with the way she was getting along, so sent for Judge Orr and advised with

him, and as a result thereof he sent Dr. Lloyd R. Allen to examine her; that she didn't think Dr. Allen was one of the company's physicians, but now believes he was employed by them. Dr. Allen examined the plaintiff first about September 15th. He testified that she became his patient on that day, and so continued until November 23rd. When he first saw her he talked to her about the advisability of having some other than the company's surgeon see her. It is perfectly evident that she acquiesced in this arrangement, and Dr. Allen, who did not practice surgery, called in Dr. Lewis H. McKinnie, who usually worked with him, and who, at his request, visited the plaintiff once or twice, the first time being on September 20th. On November 9th John O. Henry, claim agent for the company, visited plaintiff at the hospital, and talked with her, as he had several times prior thereto, about a settlement. Plaintiff says Dr. Allen had told her she would probably not be able to work that winter. She says that on November 9th, when the claim agent called, he tendered her a check for $900 and told her that was all the company would pay, and she could take that or nothing, provided she had not employed an attorney—if she had, the company would pay nothing; that he had settled her hospital and other expenses. Thereupon, she asked to see Dr. Allen, who was in the building, and was sent to her. Upon consultation, he gave her his opinion as to her condition, stated that he thought the settlement offered was fair, and advised her to accept it, but requested her not to tell Judge Orr that he had made that recommendation. Thereupon, Mr. Henry returned to her room, delivered her the check for $900, and the following release and receipt were executed:

"RELEASE.

KNOW ALL MEN BY THESE PRESENTS.

That I, Jennie M. Huntling, now of Bethel Hospital, and Beatrice, Neb., for and in consideration of the sum of nine

hundred dollars, and Dr. McKinnie and $20 to Dr. Lloyd Allen and other valuable considerations to me this day in hand paid by the Colorado Springs & Interurban Railway Company, a corporation, have released, remised and forever discharged, and by these presents do release, remise, discharge and acquit the said company, its successors and assigns, from and of all claims and demands of every kind, nature and character whatsoever which I ever had or now have against said company from the beginning, and especially from and of all claims, demands, damages and causes of action. which I ever had or now have, or which I or my heirs, executors or administrators hereafter shall, can or may have for, upon or by reason of that certain accident occurring on, to-wit, the 25th day of August, 1912, at or near North Tejon and Bijou, in the town or city of Colorado Springs, State of Colorado, wherein I suffered various personal injuries.

Dated at Colorado Springs, Colorado, this 9th day of November, 1912.

JENNIE M. HUNTLING.

Witnesses to signature:

MRS. T. DUCKLESS,

J. O. HENRY,
*Claim Agent.*"

"The Colorado Springs & Interurban Railway Company,

To Jennie M. Huntling, Dr.

Date.

Nov. 9, 1912.

Settlement in full for accident of Aug. 25, 1912.

Received Nov. 9, 1912, from The Colorado Springs & Interurban Railway Co., nine hundred dollars, in full payment of the above account.

JENNIE M. HUNTLING.

Note—The above receipt must be dated and signed by the party in whose favor this voucher is made, or where signed by another party the authority for doing so must, in all cases, accompany it. Where receipted for by any corporation, the party signing will please designate his official title and name of corporation."

Plaintiff remained in the hospital some two weeks after the settlement under the care of Dr. Allen. She then left the institution and has since resided in Colorado Springs. She carried the check for $900, with which settlement was made, until March 4, 1913, when she deposited it to her checking account and continued to check against it from that time until about March 1, 1915, when it was exhausted.

The original complaint in the present action was filed May 14, 1914; the amended complaint June 14, 1914. Plaintiff claimed damages in the sum of $30,000, due solely to the negligence of the company. The first defense is in substance a general denial; the second a plea of contributory negligence on the part of the plaintiff; the third the settlement above referred to. Plaintiff by her replication denied contributory negligence, and as to the settlement alleged that from the time of the accident until the date of the settlement she was in charge of "the physician employed, directed and controlled by defendant"; that said physician misrepresented to her the extent of her injuries, represented to her that she had practically recovered, kept her under the influence of drugs and opiates so that she felt little pain, and advised her to accept the tender of the defendant; that the claim agent of the company co-operated with the physician to deceive her and mislead her into such settlement, and that she was under the influence of drugs at the time she signed the release and receipt.

The cause was tried June 27, 1916, and the verdict of the jury was for plaintiff in the sum of $9,100, being $10,000 less the $900 already paid.

Mr. Justice Burke delivered the opinion of the court.

The trial court very properly instructed the jury that the orderly method of procedure for it to pursue in arriving at its verdict would be to determine first the validity of the release. This is likewise the "orderly methed" here. The validity of this release depends, first, upon the fairness and good faith of its original execution; if these be wanting, or if there be sufficient evidence thereof to justify the submission of that question to the jury, then, second, upon plaintiff's ratification. It has been said by this court in *Jessey v. Butterfield*, 61 Colo. 256, 157 Pac. 1, that the proof of fraud must be "clear and convincing," and this is admitted by counsel for plaintiff to be the rule. It is the rule which was given by the trial court in this case in instruction No. 7, but the mere giving of such a rule does not furnish such proof. There must have been some evidence before the jury which it would be entitled to consider as "clear and convincing." There is none in this case.

Plaintiff's allegation of having been drugged to such an extent as to prevent her from comprehending the extent of her injuries at the time of the settlement, or the nature and extent of the settlement, are wholly unsupported by proof.

Her allegations of fraud, misconduct and undue influence on the part of defendant's physician, Dr. Hanford (if it was to Dr. Hanford such allegations were intended to apply) are very unsatisfactorily shown. If intended to apply to Drs. Allen and McKinnie, they are without force until sufficient evidence be adduced to justify the jury in finding that these doctors were in the employ of the company. The proof here not only fails, but conclusively shows the contrary. Plaintiff's first employment of an adviser was that of Judge Orr, her attorney. Through him she employed Dr. Allen. Through Dr. Allen, she employed Dr. McKinnie. These were *her* advisers acting in *her* behalf and at *her* request. There is absolutely nothing in this record to impeach their good faith, or their loyalty to her interests. Under such circumstances, it would be difficult to establish

her right to rely upon representations made to her by the company's agents and employees; but we have her own uncontradicted testimony that she did not so rely.

Dr. Allen gave her his best judgment as to the nature and extent of her injuries and the probable time required for her recovery. There is nothing to impugn the good faith of his advice, though he may have been mistaken in some of his conclusions. Apparently she saw fit in the matter of settlement to rely upon her doctor rather than her lawyer. That was her own affair, and settlement made under such circumstances is just as binding as though it were made under the guidance and advice of her attorney. The whole theory of Drs. Allen and McKinnie representing the defendant company, as well as the theory that this settlement was procured by fraud and misrepresentation, is without foundation, save in the unwarranted inference and argument of counsel.

By instruction No. 8 the jury was told that "even if the physician or claim agent, or both of them, advised the plaintiff to execute said release, this would not entitle her to rescind it unless they coupled this advice with false representations *on which she relied.*"

The instruction was correct, but had no application to the case. If "the physician" referred to therein was Dr. Hanford, plaintiff testifies she did *not* rely upon his representations, but expressly called Dr. Allen and acted upon his advice. If the physician referred to is Dr. Allen, then no advice given by him and no reliance placed upon his representations can form any basis for the recovery, because he was her physician, and for his representations and advice the company is not responsible.

The case of *Guldager v. Rockwell,* 14 Colo. 459, 24 Pac. 556, so far as the receipt and the release are concerned, was similar to the instant case. The plaintiff there, as here, acted with the full knowledge of her rights. The document signed was, in effect, similar to the one here in question. The court held that "there was no evidence upon

which fraud or mistake could be predicated," and held the contract a bar to the action. There is no such evidence here.

If there were no actual fraud perpetrated in procuring the release, must it, nevertheless, be held a settlement for such injuries only as plaintiff says she was told by the physicians, and believed, she had sustained?

One of the principal cases relied upon by plaintiff is *Lumley v. Wabash R. Co.*, 76 Fed. 66, 22 C. C. A. 60. In the absence of proof of actual fraud, this authority is sufficient to defeat any recovery by plaintiff in the present case. The court there said (page 70):

"The case is not one where it was sought to compromise and settle a general claim for all the injuries resulting from a particular accident, known and unknown. If one agrees that he will receive a given amount in satisfaction and settlement for his damages sustained through a particular accident, it is not essential that every possible consequence of the tort shall be mentioned, considered, or enumerated. The subsequent discovery by one giving such a release that he was worse hurt than he had supposed, would not, in and of itself, be ground for setting aside the settlement or limiting the release. * * * If a release is given specifically mentioning the particular injuries known and considered as the basis of settlement, general language following will be held not to include a particular injury then unknown to both parties of a character so serious as to clearly indicate that, if it had been known, the release would not have been signed."

The court held that to be a case in which a release had been given "specifically mentioning the particular injuries known and considered as the basis of settlement," whereas the instant case is clearly one "where it was sought to compromise and settle a general claim for all the injuries resulting from a particular accident," and there is not to be found in the release now under consideration a single word relating to particular injuries.

Even if the correctness of the foregoing conclusion were in doubt, still the plaintiff was barred from recovery in this action because she had clearly ratified the settlement in question.

It can not be disputed that ratification must be predicated upon an actual and existing purpose to approve the act, as said in *Manning v. Heidelbach*, 138 N. Y. Supp. 750-754, 153 Ap. Div. 790; nor that mere delay in rescinding does not take away the right, as held in *Wicks v. Smith*, 21 Kan. 412, 30 Am. Rep. 433; nor that, so long as no election is made, a party retains the right to determine it either way, as held in *Clough v. Ry. Co.*, 7 Law. Rep., Ex. Cases, 26-35.

But some acts are such a clear evidence of purpose as to admit of no contradiction. Delay may be so great, considering all the circumstances of the case, as to be equivalent to decision, and election is sometimes better evidenced by conduct than language.

It is argued that plaintiff spent the money before she discovered the fraud. The claim of fraud is predicated upon the theory that the doctors whom she believed to be hers, and hence relied upon, were in fact the company's. If this contention is true, there is no evidence or allegation as to the date of her discovery thereof, and the only inference is that she discovered it when they appeared as witnesses and testified contrary to her expectation. Although she long had in her possession the money paid her by the company under this settlement, there is no evidence of any attempt on her part to settle with those whom she thought to be her physicians, or of their refusal to accept payment from her. The conclusion is inevitable that she knew these were her servants and that she understood their bills, as well as hospital expenses, were being paid by the company, in addition to the $900, as a part of the settlement.

If plaintiff were not in the full possession of her faculties and competent to contract, when this settlement was made,

that knowledge must have come to her at least within a short time after she. left the hospital late in November, and, with this check for $900 in her possession, she must have been cognizant of the fact that something unusual had occurred. If, as she says, she had been told, and believed, that her injuries were slight and temporary and that she could walk without her crutches if she only thought so, she knew the contrary when she cashed this $900 check in March following. If she were misled on any other matter relating to her injuries, except as to the exact location and nature of the fracture (which she claims to have discovered by the X-ray examination of March, 1915), she knew the contrary prior to the filing of her complaint March 14, 1914, yet took no steps to rescind the settlement and continued to check on the proceeds thereof for almost a year thereafter.

By instruction No. 11 the jury was told that "even though you should find from the evidence that there were false representations made to the plaintiff, and that she was induced by them to accept the money and execute the release, yet if you should further find from the evidence that she failed to rescind the release with reasonable diligence after discovery of the fraud and to notify the defendant of such rescission, she can not now set aside said release, and on such a state of facts your verdict must be for the defendant."

This is a correct statement of law, but inasmuch as this record conclusively shows that plaintiff did not rescind with reasonable diligence after she discovered, or ought to have discovered, the truth, there was no evidence upon which the jury could find for her under this rule.

"After she had recovered her health and usual mental condition so as to render her capable of comprehending the settlement made, she was bound either to affirm or disaffirm, and if she did not elect to disaffirm at once, that is, within a reasonable time, she must be considered as having elected to abide by the settlement. And having once, by her conduct, affirmed it, she could not afterwards disaffirm

it." *Chicago, St. P. & K. C. Ry. Co. v. Pierce*, 64 Fed. 293-296, 12 C. C. A. 110, 113.

At the close of the evidence defendant moved for a directed verdict upon several grounds, among others that there was no proof tending in any manner to avoid the *bona fides* of the release, and that the evidence conclusively showed that the plaintiff had fully ratified it. This motion was overruled. For the reasons given, it should have been sustained. The judgment is accordingly reversed with directions to the trial court to enter judgment of dismissal herein at the costs of plaintiff.

Garrigues, C. J., and Teller, J., concurring.