No. 15,654.

GOFF *v.* BOMA INVESTMENT COMPANY.
(181 P. [2d] 459)

Decided May 5, 1957. Rehearing denied June 2, 1947.

Mr. FOSTER CLINE, Mr. CARL CLINE, Mr. W. D. Mc-CLAIN, Mr. EDWIN A. WILLIAMS, for plaintiff in error.

Mr. HENRY McALLISTER, for defendant in error.

*En Banc.*

MR. JUSTICE LUXFORD delivered the opinion of the court.

THIS is an action for money had and received. From a judgment for defendant, this writ of error is prosecuted. The parties are designated as they appeared in the lower court.

The case concerns oil lands in the Salt Creek Oil Field, Natrona county, Wyoming, which were withdrawn from location and entry by order of the President of the United States in 1909. Shortly thereafter certain parties entered upon the lands and made locations, which were assigned to the Midwest Oil Company. In 1915, after extended litigation, the Supreme Court in *United States v. Midwest Oil Company*, 236 U.S. 459, sustained the validity of the withdrawal order. For several years thereafter a chaotic condition existed in this field, but in 1920, Congress passed the Oil Leasing Act with a provision therein that any applicant for a lease should clear the title from any valid claims based on locations prior to the withdrawal order. Many of these old claims or rights were obtained by various parties and the oil companies having obtained government leases, recognized and paid for said rights. Thereupon various parties began the collection of evidences respect-

ing ancient locations in the field claimed to have been made long prior to the Leasing Act. Plaintiff and his associates, knowing the success which F. G. Bonfils and H. H. Tammen had had in obtaining settlements of those rights came to Denver and sought their aid. As a result, on October 26, 1921, they entered into a contract regarding the handling of the same. It is claimed that Henry A. Miller's name was inserted by Bonfils, as party of the second part, as his agent. In any event Bonfils handled the money from settlements of these rights and distribution was made in accordance with the terms of the contract. Dissatisfied, however, with the distribution, George Goff, plaintiff, and others, on January 9, 1932, filed suit against Bonfils, being case No. A-2551 in the district court, for an accounting, claiming that the amount distributed was considerably less than that to which they were entitled under the terms of the 1921 contract. Bonfils died February 2, 1933, and March 31, 1933, his executors were substituted as defendants. Thereafter and on January 5, 1934, a full and complete settlement was made of all matters involved in the suit by the payment to George Goff, and his associates, of seven thousand five hundred fifty-seven and 60/100 dollars. A release was signed authorizing dismissal of the case with prejudice which was done January 6, 1934. The foregoing briefly and partially gives some of the facts leading up to this proceeding. It was stipulated that for all purposes of the case Bonfils, and defendant Boma Investment Company, were one and the same. Complaint in the instant case was filed August 2, 1939, in which it was alleged that August 16, 1924, Bonfils received one hundred thousand dollars, which he deposited with defendant without consideration, and which should have been distributed under the 1921 contract, but which in fact was concealed from plaintiff and concerning which he did not learn until about May 1, 1934; that he was entitled to 3.1 per cent thereof or three thousand one hundred dollars, with interest at 6 per

cent from August 23, 1924, for which amount this suit was brought. Defendant by its answer admitted the 1921 contract and alleged it had performed all its obligations respecting same. Further answering it alleged that the January 6, 1934 settlement of case No. A-2551, and dismissal of same with prejudice, estopped plaintiff from asserting claim against the executors and defendant; that plaintiff had been paid more than he was entitled to under the contract and that his action was barred by various statutes of limitations. The case was tried to a jury, and a verdict returned for plaintiff and against defendant for the sum of two thousand three hundred forty-eight and 16/100 dollars and interest at 6 per cent per annum from August 27, 1924. The court entered judgment on the verdict. Thereafter defendant filed its motion to have the verdict of the jury and the judgment entered thereon set aside, which motion was granted, and judgment was entered for defendant and against plaintiff for dismissal and for costs.

It is urged: (1) That the court erred in sustaining defendant's motion to set aside the verdict of the jury and entering judgment for the defendant; (2) that the court erred in not permitting the pleadings and prayer to be amended to conform to the proof; and (3) that the court erred in allowing a letter written by Bonfils to John T. Barnett to be introduced in evidence.

We are of the opinion that the judgment for defendant entered by the trial court was correct, (1) because plaintiff's cause of action was barred by the release in case No. A-2551, and (2) because he clearly ratified the settlement made. Inasmuch as this disposes of the case it will not be necessary to discuss the other points raised. These subjects will be considered in the order named.

1. Release. "The validity of this release depends, first, upon the fairness and good faith of its original execution; if these be wanting, or if there be sufficient evidence thereof to justify the submission of that question to the jury, then, second, upon plaintiff's rati-

cation." *Colorado Springs Co. v. Huntling,* 66 Colo. 515, 520, 181 Pac. 129. It has been said by this court in *Jessey v. Butterfield,* 61 Colo. 256, 260, 157 Pac. 1, that: "Fraud is never presumed, and a contract should not be adjudged void for fraud, unless the allegations and proofs of fraud are clear and convincing."

The release in case No. A-2551, supra, and on which said suit was dismissed with prejudice, was and is in words and figures as follows, to wit:

"Know all men by these presents that Mamie S. Rogers, Harley R. Rogers, Ethel Rogers Bowen, George Goff and Harry R. Rogers, their successors and assigns and each of them, for and in consideration of the sum of Seven Thousand Five Hundred Fifty-seven and 60/100 Dollars ($7,557.60) to them in hand paid, the receipt of which is by them severally and jointly acknowledged, do hereby release and discharge Helen G. Bonfils, Thomas L. Bonfils, Charles A. Bonfils, F. W. Bonfils, J. B. Grant, and The Denver National Bank, as Executors under the last will and testament of F. G. Bonfils, deceased; Boma Investment Company, a Delaware corporation; The Post Printing and Publishing Company, a Colorado corporation; Agnes R. Tammen; Plains Security Company, a Colorado corporation; Agnes R. Tammen, J. Ogden Armour, and The Denver National Bank, as Executors of the last will and testament of H. H. Tammen, deceased; The Denver National Bank and Agnes R. Tammen, as Trustees of the Children's Hospital Association of Denver, their successors and assigns and each of them, from any and all manner of claims, demands, damages, causes of action or suits that they might now have or that might subsequently accrue to them, or any of them, by reason of any matter or thing whatsoever, and particularly growing out of or in anywise connected with, directly or indirectly, that certain contract entered into on or about October 26, 1921, between Fred B. Rogers, Harry R. Rogers, George Goff, W. H. Patten and Henry A. Miller, and particularly and especially on

account of the matters and things set forth and alleged in the complaint and amended complaint in that certain suit entitled Mamie S. Rogers, Harley R. Rogers, Ethel Rogers Bowen, George Goff and Harry R. Rogers vs. Frederick G. Bonfils, the same being numbered A-2551 of the causes pending in the District Court of the City and County of Denver, State of Colorado, to which said complaint reference is hereby made for greater certainty.

"Further, the undersigned do hereby warrant and declare that Mamie S. Rogers, Harley R. Rogers and Ethel Rogers Bowen, are the widow and the sole heirs at law of the deceased, Fred B. Rogers; that the said deceased died on or about November 2, 1926, and no administrator was ever appointed for said estate, and that neither the next of kin nor any creditors have ever applied for said administration.

"It is the purpose of this release to forever settle, adjust and discharge all claims of whatsoever kind or nature that the undersigned have or may have against the parties heretofore mentioned, and it is agreed that the case of Mamie S. Rogers, Harley R. Rogers, Ethel Rogers Bowen, George Goff and Harry R. Rogers vs. Frederick G. Bonfils, the same being numbered A-2551 of the causes pending in the District Court of the City and County of Denver, State of Colorado, be dismissed with prejudice, each side to pay their own costs.

"Dated this 5th day of January, 1934."

At the time the release was signed Bonfils had been dead nearly a year and it was the result of negotiations with his executors who had been substituted as defendants. There is no evidence in this case of any fraud, deceit or misrepresentation on their part or any officers of Boma Investment Company practiced upon Goff or his associates in securing this settlement agreement and release. Seven thousand five hundred fifty-seven and 60/100 dollars was paid to Goff and other plaintiffs, the purpose being "to forever settle, adjust and discharge all claims of whatsoever kind or nature" issuing out of

the 1921 contract and involved in the 1932 accounting suit. In that suit plaintiff claimed that Bonfils had made distribution on the basis of one hundred twenty-five thousand dollars, when it should have been on the basis of one hundred forty-eight thousand dollars and he says that he "had in mind to recover the difference." All told, he was paid, including money from the settlement, five thousand nine hundred thirteen and 50/100 dollars, whereas 3.1 per cent of one hudred forty-eight thousand dollars would be four thousand five hundred eighty-eight and no/100 dollars. Evidently the settlement was a compromise.

"The plainest motives of expediency and justice require that he should be charged with all the knowledge which he might have obtained had he pursued the inquiry to the end with diligence and completeness." 2. Pomeroy's Equity Jurisprudence (3rd ed.) §893. It will be noted that the release included Boma Investment Company, defendant herein, and the executors of the estate of F. G. Bonfils, deceased. This court in *Guldager v. Rockwell*, 14 Colo. 459, 24 Pac. 556, in holding that a release constituted a bar to the action said: "It is true that the claim for damages sought to be enforced in this action was not mentioned by the parties. And it is contended that the minds of the parties never met, so far as this particular demand is concerned. Plaintiff, however, executed an instrument which declared that the parties had had a full and final settlement, and acknowledged the receipt of a sum of money in full of all demands whatsoever. The money was paid by the defendant pursuant to the settlement, of which the written instrument was the evidence, and in compliance with its terms. It was received by plaintiff as the performance, on the part of the defendant, of a contract which he understood to be a final discharge and satisfaction of all demands. * * * Having contracted to settle all demands, the contract having been fully executed, she cannot now be heard to say that she did not settle all demands, but

that, on the contrary, she reserved the particular demand in question." And it was said in *Harvey v. D. & R. G. R. R. Co.*, 44 Colo. 258, 269, 99 Pac. 31: "It is not possible to believe that plaintiffs misunderstood the force, effect and import of the releases which they signed, or that they did not know that they thereby released, relinquished, satisfied and discharged, for the consideration therein named, all claims and demands whatsoever which they had against defendant growing out of any and all contracts and transactions previous to the date of the releases." If plaintiff in the present case had any doubt about the fullness of the release as expressly stated therein, he should have refused to sign it or had it limited to cover known claims. As the court held in *Houston v. Trower*, 297 Fed. 558, 562: "He claims a mistake on his part in signing the release, when he was ignorant that he had a cause of action for deceit against the plaintiff; but he cannot be heard to claim, in the face of the paper signed by him, that he was ignorant of the fact that the release informed him that he was settling all claims for any reason against the plaintiff growing out of the defendant's purchase of the stock. If he was doubtful of the scope of this release, because he did not know what claims he might have against the plaintiff * * * he should have refrained from executing it, or should have had it modified to cover only known claims." And it was said also in *Willett v. Herrick*, 258 Mass. 585, 595, 155 N.E. 589, 593 that: "The terms of the settlement with the defendants were understood by the plaintiffs and they had the advice of counsel. Even if the plaintiffs did not have in mind when the document was signed the wrongs of which they now complain, as the release was a general one the present action was included in it. * * * The settlement, therefore, was a final arrangement between the parties, and, if free from fraud, it was a bar to the plaintiff's action." We are of the opinion that the release barred plaintiff's action.

2. Ratification. If the foregoing conclusions were in

doubt, still plaintiff is barred from recovery because he clearly ratified the settlement made. This conclusion is fully supported by *Colorado Springs & I. Ry. Co., v. Huntling,* 66 Colo. 515, 181 Pac. 129. In that case the release was executed in November, 1912, and the complaint was filed in May, 1914. Regarding the ratification of the release we said:

"By instruction No. 11 the jury was told that 'even though you should find from the evidence that there were false representations made to the plaintiff, and that she was induced by them to accept the money and execute the release, yet if you should further find from the evidence that she failed to rescind the release with reasonable diligence after discovery of the fraud and to notify the defendant of such rescission, she cannot now set aside such release, and on such a state of facts your verdict must be for the defendant.'

"This is a correct statement of law, but inasmuch as this record conclusively shows that plaintiff did not rescind with reasonable diligence after she discovered, or ought to have discovered, the truth, there was no evidence upon which the jury could find for her under this rule.

" 'After she had recovered her health and usual mental condition so as to render her capable of comprehending the settlement made, she was bound either to affirm or disaffirm, and if she did not elect to disaffirm at once, that is, within a reasonable time, she must be considered as having elected to abide by the settlement. And having once, by her conduct, affirmed it, she could not afterwards disaffirm it.' *Chicago, St. P. & K. C. Ry. Co. v. Pierce,* 64 Fed. 293, 296, 12 C.C.A. 110, 113.

"At the close of the evidence defendant moved for a directed verdict upon several grounds, among others that there was no proof tending in any manner to avoid the *bona fides* of the release, and that the evidence conclusively showed that the plaintiff had fully ratified it. This motion was overruled. For the reasons given, it should

have been sustained. The judgment is accordingly reversed with directions to the trial court to enter judgment herein at the costs of plaintiff."

Plaintiff claims he first learned about the amount paid defendant, concerning which he complains herein, about May 1, 1934. He instituted this action August 2, 1939— over five years and three months thereafter. This, it seems to us, conclusively showed that he had fully ratified the release.

The Judgment is affirmed.

MR. JUSTICE JACKSON formerly concurring, now concurs in the conclusion.