564 P.2d 958 (1977)
MOUNTAIN STONE COMPANY, a Colorado Corporation, Plaintiff-Appellee,
v.
H. W. HAMMOND COMPANY, a Colorado Corporation, Specialty Restaurants Corporation, a California Corporation, duly authorized to do business within the State of Colorado, Defendants-Appellants,
Joe Malban d/b/a Jay's Construction Co., Defendant,
Jones Heartz Lime Co., Inc., a Colorado Corporation, Defendant-Appellee.
No. 76-405.
Colorado Court of Appeals, Div. II.
February 17, 1977.
Rehearing Denied March 10, 1977.
Certiorari Denied May 31, 1977.
*959 Brenman, Sobol & Baum, Richard M. Kranzler, Denver, for plaintiff-appellee.
Calkins, Kramer, Grimshaw & Harring, John H. Lonnquist, Jr., Denver, for defendants-appellants H. W. Hammond Co. and Specialty Restaurants Corp.
Gorsuch, Kirgis, Campbell, Walker & Grover, David M. Powell, Denver, for defendant-appellee Jones Heartz Lime Co., Inc.
RULAND, Judge.
H. W. Hammond Company and Specialty Restaurants Corporation (the landowners) appeal from a judgment foreclosing the mechanics' liens of Mountain Stone Company and Jones Heartz Lime Co., Inc. We modify the judgment and, as modified, affirm.
The case was submitted to the trial court for decision based upon stipulated facts. H. W. Hammond Company was the record owner of the subject property and Specialty Restaurants Corporation was the lessee of a restaurant known as the "Chili Pepper" which it erected on that property. The principal contractor for construction of the restaurant was defendant Joe Malban, d/b/a Jay's Construction Co., and he engaged the lien claimants as subcontractors. Mountain Stone Company performed labor on the restaurant valued at $6,000; Jones Heartz Lime Co. supplied materials valued at $469.38 which were incorporated in the structure.
In connection with the restaurant project, Specialty Restaurants followed a procedure whereby the principal contractor was paid upon receipt of labor and material releases executed by all subcontractors and laborers who had performed work upon or supplied materials for the structure up through the date of payment. Pursuant to that procedure, the lien claimants executed the following document which is the focal point of the dispute between the parties:
"Labor and/or Material Release:
"By this instrument I hereby acknowledge receipt of payment in full for any and all materials, supplies, labor, or *960 equipment furnished by me on the project listed below, and release any and all claims thereon through January 16, 1975, less ten percent retention per contract.
"Job: Chili Pepper."
Following execution of the foregoing release, the contractor was paid by Specialty Restaurants, and lien claimants were paid by checks drawn on the account of the contractor. However, payment on the checks issued to the lien claimants was stopped by the contractor and the present litigation followed.
The trial court ruled that the mechanics' lien releases exchanged for the contractor's checks were unsupported by consideration and were therefore invalid. Its ruling was predicated on the proposition that the mechanics' lien statutes were enacted to protect claimants who have contributed materials and labor to the construction of improvements upon land, and that therefore, as between two innocent parties, the landowners should suffer any loss since there was no evidence of negligence on the part of the lien claimants. The landowners contend that the lien claimants should be estopped from contending that the releases are invalid and that the trial court erred in not applying that doctrine under the circumstances of this case. We agree.
The doctrine of estoppel is invoked to protect one who relies to his detriment on the promise or representations of another where the promisor may reasonably expect to induce action or forbearance of a material character. See Jacobs v. Perry, 135 Colo. 550, 313 P.2d 1008 (1957); Mooney v. Craddock, 35 Colo.App. 20, 530 P.2d 1302 (1974). The doctrine has been applied in other jurisdictions as a bar to the assertion of mechanics' lien rights in cases where the lien claimant orally advises a landowner that he has been paid in full. Annot., 155 A.L.R. 350.
Based upon the analysis in McLellan v. Hamernick, 264 Minn. 345, 118 N.W.2d 791 (1962), we are persuaded that the doctrine should apply, at least to a written release. In McLellan, the court stated:
"The owner of the property was entitled to protect himself from liens against his property by requiring lien waivers before he paid the balance due the contractor. If those furnishing material and labor were willing to execute such lien waivers, relying upon the contractor's promise to pay them, they should not be heard to complain after the homeowner has altered his position in reliance on such waivers. Any other rule would render lien waivers valueless."
Lien claimants argue that the doctrine of estoppel may not be applied in this jurisdiction because § 38-22-119, C.R.S. 1973, which provides that "[n]o agreement to waive . . . any lien . . . shall be binding except as between the parties to such contract," and because of § 38-22-123, C.R.S.1973, which mandates that "[n]o payment made by any owner to any contractor for the purpose of avoiding any anticipated lien . . . shall be valid." Even assuming that the landowners in this case were not deemed to be parties to the release executed by lien claimants, the doctrine of estoppel serves to "cut off rights or privileges conferred by statute." Johnson v. Neel, 123 Colo. 377, 229 P.2d 939 (1951). see also Priestley v. Inwood Industries, Inc., Colo., 560 P.2d 822 (announced September 20, 1976). Moreover, we view § 38-22-123, C.R.S.1973, as totally inapplicable to the facts of this case because the landowners paid the contractor after the lien releases were secured, and thus the payment may not be deemed as made to avoid "any anticipated lien." Thus, we hold that, having executed a release which they knew or should have known the landowners would rely upon in making payment to the contractor, the lien claimants are now estopped to assert their lien rights.
While conceding that a subcontractor may execute a valid waiver of his right to claim a mechanics' lien, see Bishop v. Moore, 137 Colo. 263, 323 P.2d 897 (1958), the lien claimants, in support of the trial court's judgment, contend that the release executed by them may not be construed as a waiver of their right to claim a lien *961 because that waiver is ambiguous. They rely on the fact that there was no specific reference in the document to any lien rights, and on the fact that the amount actually owed each claimant cannot be determined from the release itself because of the phrase "less ten percent retention per contract." We find no merit in this contention.
Like other contracts, the obvious meaning of the provisions of a release must be given effect. Hyzak v. Greybar, 36 Colo. App. 164, 537 P.2d 1089 (1975). The terms "`[a]ny' and `all' have been described as the most comprehensive words in the English language." See North v. Hawkinson, 324 S.W.2d 733 (Mo.1959) (Storckman, J., concurring). Thus, the provision of the release whereby lien claimants "release any and all claims" on the project "Chili Pepper" encompassed their mechanics' lien rights. If the intent of lien claimants were otherwise, it was incumbent upon them to insert appropriate language limiting the scope of the release. See Goff v. Boma Investment Co., 116 Colo. 359, 181 P.2d 459 (1947).
Contrary to lien claimants' contention, we find no authority for the proposition that the lien release must specify the amount a lien claimant has been paid. By the terms of the release quoted above, lien claimants expressly acknowledge receipt of "payment in full" for all labor performed and materials supplied through January 16, 1975, except for a 10 percent retainage pursuant to the provisions of their contract. The retainage is calculated by subtracting 10 percent from the invoices for work done through January 16, 1975, and the landowners concede that the releases are not effective as to this amount.
We have considered the other arguments of lien claimants relative to the legal sufficiency of the release and find them also to be without merit.
Lien claimants finally contend that their releases are ineffective because of § 4-3-802, C.R.S.1973, of the Uniform Commercial Code and the Official Comments relative thereto, which indicate that taking a "seemingly solvent party's check" is commercially normal and that if the check is dishonored, the payee may either sue on the check or enforce the underlying obligation. See § 4-2-511(3), C.R.S.1973 (Comment 4); § 4-3-802, C.R.S.1973 (Comment 3). Lien claimants argue that the provisions of the UCC thus render their lien releases conditional, and that, therefore, the landowners were not entitled to rely thereon. While we agree that lien claimants retain the rights enumerated by § 4-3-802, C.R.S. 1973, against the contractor, we reject the argument that this section renders an unconditional release conditional as pertains to the rights of the landowners. Rather, to insure that the releases were conditional, it was incumbent upon the lien claimants to insert appropriate language for that purpose. See Goff v. Boma Investment Co., supra.
The judgment is modified to award $600 on the claim of Mountain Stone Company and $46.94 on the claim of Jones Heartz Lime Co., Inc., together with interest and costs. As modified, the judgment is affirmed.
SILVERSTEIN, C. J., and VanCISE, J., concur.