**EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Plaintiff,**

v.

**William MEIERS, Jr.; Brant Boatwright; Barry Smith; Richard Van De Voorde; Duane Loban; and Colorado P.I.C., a Colorado partnership, Defendants and Third Party Plaintiffs,**

v.

**GENERAL GROWTH PROPERTIES, INC., Third Party Defendant.**

**Civ. A. No. 85–K–1722.**

United States District Court, D. Colorado.

March 14, 1986.

holding.

Edward A. Lipton, Nelson, Hoskin, Groves & Prinster, Grand Junction, Colo., for plaintiff and third party defendant.

Gary E. Parish, and Janet A. Savage, Popham, Haik, Schnobrich, Kaufman & Doty, Ltd., Denver, Colo., for defendants.

### MEMORANDUM OPINION AND ORDER

KANE, District Judge.

General Growth Properties, impleaded by defendants who are collectively referred to as PIC, was in 1980 the owner and general manager of Mesa Mall in Grand Junction, Colorado. On or around November 15 of that year, GGP and PIC entered into a 10-year lease for Space 232 at Mesa Mall. PIC was the owner of a franchise called "Happy Joe's Pizza & Ice Cream Parlour." Plaintiff Equitable purchased Mesa Mall from GGP in 1985, and claims in this suit payments of rental and other charges owed by PIC. PIC has counterclaimed on several grounds.

Equitable now moves for partial summary judgment pursuant to Fed.R.Civ.P. 56 on the second and third claims for relief in PIC's counterclaim and third party complaint. Summary judgment is a drastic remedy which is appropriate only where there exists no genuine issue of material fact. In determining the propriety of summary judgment I must construe all pleadings, affidavits and depositions liberally in favor of the party against whom the motion is made. As a matter of law, the movant must show entitlement to summary disposition beyond all reasonable doubt. *United States, Etc. v. Santa Fe Engineers, Inc.*, 515 F.Supp. 512, 514 (D.Colo. 1981).

PIC's second claim for relief asserts that GGP breached the terms of the lease by failing to perform in accordance with representations GGP had made to induce PIC to enter into the lease. The third claim for relief sets forth a cause of action based on fraud, i.e. that at the time the subject representations were made, GGP knew or had reason to know that they were false. The representations upon which PIC premises its right to recover in its third claim for relief include promises that a bridge or walkway from a nearby residential area to the mall would be built in the near future; that the traffic pattern of people exiting from the movie theaters at the mall would bring them past Happy Joe's entrance; and that Happy Joe's would be the only "fast food" facility in the mall. PIC claims that GGP's failure timely to complete the residential bridge; GGP's erection of security gates between the movie theaters and the rest of the mall which prevented moviegoers' access to Happy Joe's; and GGP's leasing space in the mall to other fast-food vendors constitute breach as set forth in the second claim for relief.

Three years before the present action, PIC and GGP were involved in other litigation over the payment of back rent GGP claimed was due and various offsets to that rent. A settlement agreement was reached on August 15, 1982. Paragraph (8) of this agreement states as follows:

> Colorado P.I.C. and the Guarantors hereby waive, release, relinquish and abandon any and all claims, defenses, counterclaims, actions, credits and claims for offsets not specifically referred to in this Agreement that they have had or now have against GGP concerning the Lease and Leased Premises....

At issue now is whether this release bars PIC's two counterclaims. Plaintiff argues that the circumstances underlying the second and third claims for relief existed at the time of the settlement agreement, and that PIC was aware of these circumstances, so that PIC has waived the right to recover with respect to these claims. PIC asserts that the release does not preclude these counterclaims, as the parties' intent at the time was that the release be effective only as to the disputed offsets.

Colorado law establishes that

> The scope of a release is determined by the parties *as expressed in the release instrument,* considered in light of the nature of the claim and the objective circumstances underlying the execution of the instrument.

*Cingoranelli v. St. Paul Fire and Marine Insurance Co.,* 658 P.2d 863, 865 (Colo. 1983) (emphasis added). The agreement expressly states that it effects a release of *all* claims "that [defendants] have had or now have against GGP concerning the Lease and Leased Premises...." "Like other contracts, the obvious meaning of a release must be given effect." *Mountain Stone Co. v. H.W. Hammond Co.,* 39 Colo. App. 58, 564 P.2d 958, 960 (Colo.App.1977). Giving the language reflecting the scope of the release its obvious meaning, I cannot construe it to apply only to claims of offsets as defendant urges.

It is also well established, however, that a release purporting to apply to *all* claims only covers claims known to exist by the releasing party at the time of execution. "[A] demand of which the parties were ignorant when the release was given is not as a rule embraced therein." *Seaver v. Snider,* 21 Colo.App. 431, 122 P. 402 (1912); *See also,* 76 C.J.S., *Release,* §§ 51–52.

I must determine, then, whether at the time the release was executed, PIC knew of the alleged breach and misrepresentation as set forth in its second and third claims for relief. I hold that PIC had knowledge of such claims, and since the release by its terms covers *all* claims, these claims are barred.

Plaintiff has submitted in support of its motion the affidavit of Michael Law, the manager and later supervisor of Mesa Mall during the relevant time period. PIC fails to rebut Mr. Law's affidavit and effectively concedes as much in ¶ 7 of its counterclaim and third party complaint. Mr. Law's affidavit establishes that the opening date of the movie theaters was February 6, 1981;

the security fences were erected "in 1981"; the residential bridge was not opened until December 8, 1983; and fast food items have been sold continuously at other outlets in the mall since its opening. Both pizza and ice cream have been sold at other outlets besides Happy Joe's since 1981.

There is no question, therefore, that the representations made by GGP in 1980 and GGP's failure to abide timely by those representations was known to PIC by Aug. 15, 1982 when the release was executed. GGP had already "not delivered" in accordance with PIC's expectations.

PIC offers the affidavit of William Meirs in support of its position. While Mr. Meirs states that the instant counterclaims were not within the contemplation of the parties, he does not deny PIC's August 15, 1982 knowledge of plaintiff's conduct giving rise to the second and third claims for relief. The case law and commentators are clear that "contemplation of the parties" in the release context means "knowledge of the parties". A party may not at once have knowledge of conduct giving rise to a claim and fail to contemplate the claim. PIC seems to assert that even though it was aware of GGP's activity upon which the second and third claims are premised, it was unaware of such activity's net effect—the ultimate failure of "Happy Joe's". This argument is unavailing. It is knowledge of conduct, or a condition, giving rise to a claim which brings it within the ambit of a general release, not knowledge of its ultimate effect.

Mr. Meirs also states that, though aware of GGP's non-compliance with its purported representations, PIC "still believed that General Growth would live up to its representations". Assuming this to be true, as required in considering a motion for summary judgment, PIC has nowhere pleaded a cause of action based on representations other than those made in negotiations for the original lease agreement. This "fact" therefore, is an island unto itself—it supports no pleaded claim for relief. It is not relevant to the instant motion.

In *Mountain Stone,* 564 P.2d 958, the Colorado Court of Appeals gave a "plain meaning" interpretation to the release there at issue:

> The terms " '[a]ny' and 'all' have been described as the most comprehensive words in the English langauge" ... Thus the provision of the release whereby lien claimants "release any and all claims" ... encompassed their mechanics' lien rights. *If the intent of the lien claimants were otherwise, it was incumbent upon them to insert appropriate language limiting the scope of the release.*

564 P.2d at 961 (citations omitted and emphasis added). C.J.S. similarly states that:

> A general release, not restricted by its terms to particular claims or demands ordinarily covers all claims or demands due at the time of execution and within contemplation of the parties, and it has been said that *any existing liabilities intended to be excepted from such release should be expressly set forth therein.*

76 C.J.S., *Release* § 51 at p. 696.

Similarly, if PIC wished to except claims of breach and misrepresentation from the release, they should have expressed such in that release.

I find that as a matter of law the release signed by PIC in 1982 bars the second and third counterclaims defendant asserts in the present action. Plaintiff's motion for summary judgment on those two claims is therefore GRANTED.