567 P.2d 965

GEORGE M. MORRIS CONSTRUCTION COMPANY, Plaintiff-Appellee,

v.

FOUR SEASONS MOTOR INN, INC., and Dale J. Bellamah Corporation, Defendants-Third-Party Plaintiff-Appellants,

and

American Bonding Company, a Nebraska Corporation, Third-Party Defendant-Appellee,

and

Named Individual Laborers, Intervenors-Appellees.

No. 11136.

Supreme Court of New Mexico.

Aug. 11, 1977.

Ahern, Montgomery & Pongetti, J. Victor Pongetti, Albuquerque, for defendants-third-party plaintiffs-appellants.

Menig, Sager, Curran & Sturges, Edward T. Curran, Albuquerque, for Morris Const.

Keleher & McLeod, Henry F. Narvaez, Albuquerque, for American Bonding.

Kool, Kool, Bloomfield & Eaves, John L. Hollis, Albuquerque, for Named Laborers.

## OPINION

SOSA, Justice.

Plaintiff-appellee George M. Morris Construction Company [hereinafter Morris] sued Four Seasons Motor Inn, Inc. and Dale J. Bellamah Corporation [hereinafter Bellamah], defendants-appellants and third-party plaintiffs, for arrearages under a construction contract and also filed liens against its real property. Bellamah denied those amounts, counterclaimed for slander of title, and counterclaimed for failure to disburse $18,709.32 to thirty-four laborers. Those same laborers sued Bellamah for failure to pay $15,182.23 in fringe benefits and filed liens against its property. Mesa Concrete, Springer Corporation, and Burke Concrete sued Morris and Bellamah and filed liens for arrearages. All suits were consolidated. Bellamah in turn brought a third-party complaint against American Bonding Company [hereinafter ABC], its surety, on a performance bond and a labor-material bond. ABC cross-claimed against Morris on an indemnity agreement.

The factual circumstances from which the suits arose are the following: On November 1, 1972, Bellamah and Double R, Inc. entered into a written contract for adding one hundred units to the Four seasons Motor Inn for a price of $247,046. ABC issued performance and material-labor bonds in the amount of $247,046. Double R was unable to complete the contract, so on February 16, 1973, Bellamah and Morris, who was general foreman for Double R, entered into a written contract to complete the unfinished work for $175,896.75. ABC issued a rider to the bonds, substituting Morris as principal in place of Double R.

After several months Morris determined he would be unable to complete the contract

at that price. Bellamah then orally agreed to modify the contract to put payment on a cost plus basis. Whereupon Morris completed the construction of the additions for an additional $85,367.44 over the $175,896.75 price. The additional cost included the cost of two written agreements to provide and install doors ($12,347.59) and bathroom vanities ($8,500).

After considering all claims and evidence the trial court ordered Bellamah to pay Morris $2,892.74, the unpaid portion of certain invoices; ordered Morris and Bellamah personally to pay the laborers $15,182.23 and granted the laborers a lien against the property in that amount; ordered Bellamah to pay Mesa Concrete, Springer Corporation, and Burke Concrete $4,822.30, $5,324.10, and $744.02 respectively (stipulated to by Bellamah); ordered Bellamah to pay the stipulated $331.28 to Morris for the laborers' fringe benefit fund; awarded Morris and the intervenors attorney fees; awarded Bellamah $10,914.60 on the performance bond against ABC; and awarded ABC $10,914.60 plus attorney fees against Morris.

On appeal all aspects of the trial court's judgment, except the stipulated amounts, are challenged by Bellamah and the other parties.

## A. Morris v. Bellamah

Morris sued Bellamah for $27,425 allegedly owed, the debts consisting of amounts due on the concrete contract ($24,878), the door contract ($325), and the vanity contract ($2,200). On the stand Morris admitted that this claim actually included the $6,459.09 he owed to his subcontractors Mesa Concrete, Springer Corporation, and Burke Concrete; the $14,850 he had already been paid once by Bellamah and which he still owed to the laborers' fringe benefit fund; the $331.28 he still owed the fringe benefit fund (this amount he had never received from Bellamah).

■ The trial court awarded Morris $9,683.11, computed as follows: (1) $6,459.09, the amount due Burke, Mesa, and Springer; (2) $331.28, the amount due the laborers' fringe benefit fund but never received from Bellamah; (3) $2,892.74, the amount Bellamah refused to pay on the concrete contract (and perhaps the door and vanity contracts) starting about August, 1973. There is substantial evidence to uphold these awards. Bellamah argues that there should be a $109.20 set-off for the amount it paid Morris for the Mesa Concrete bill. There is substantial evidence supporting the claim for this set-off and the trial court should have allowed it against Morris.

As a set-off against the $2,892.74 owed only to Morris, Bellamah argues that Morris received from Bellamah $14,850.95 for the laborers' fringe benefit fund, which Morris never transferred to that fund but kept for himself. Morris himself testified to that effect. This set-off should have been granted by the trial court.[1]

## B. Bellamah v. Morris Counterclaim

■ The only additional matter raised in the counterclaim was the slander of title claim for $25,500. The trial court rejected this claim by not making a finding thereon. No evidence was introduced at trial. There was substantial evidence to support the negative finding of the trial court.

## C. Intervenors (thirty-four laborers) v. Bellamah

The trial court awarded intervenors both a personal judgment against Bellamah and liens against its real estate. Bellamah argues that both judgments were improper.

■ First, the laws of New Mexico do not give a subcontractor a personal cause of action against owners, only a lien against the land or structure. Section 61–2–2, N.M. S.A.1953 (2d Repl.Vol. 9, 1974). Most jurisdictions have rejected such quasi-contractual claims against owners, although two

---

1. Due to the various set-offs arising from the other transactions, a final accounting will not yet be attempted.

states have allowed such actions in narrow circumstances. For a general discussion of those cases and their legal theories, see Annot., 62 A.L.R.3d 288 (1975). We do not approve of such a personal judgment in this factual situation, and it should not have arisen here, thus we reverse the trial court. See *Allison v. Schuler,* 38 N.M. 506, 36 P.2d 519 (1934).

Second, the trial court granted intervenors a lien against the property. Bellamah argues that the thirty-four intervenors signed waivers of lien[2] and thus the trial court should have denied the liens. Intervenors counter that Bellamah failed to plead waiver as an affirmative defense, thus Bellamah was barred from asserting it during trial. Bellamah argues that intervenors broached the issue when they asked Bellamah's witness, Mr. McGregor, during cross-examination about the existence, identification, and usage of the lien waivers. Counsel to Bellamah on redirect pursued the subject further and sought to introduce Exhibit J, a copy of one of the waivers of lien. Only at that point did counsel for intervenors object on the grounds that there was no foundation, no authentication, and general inadmissibility. The trial court overruled the objection and received Exhibit J into evidence.

After a short recess, counsel for Bellamah sought to introduce Exhibit K, consisting of other lien waivers, into evidence. Counsel for intervenors again raised the same objections but added a new one: it was a new affirmative defense not raised in the pleadings. The trial court then ruled it would receive Exhibits J and K into evidence

against all parties except intervenors. The trial court agreed to amend the pleadings to conform to the evidence, but it continued to hold that Bellamah had waived its affirmative defense of waiver of lien.

■ On appeal Bellamah argues that the issue of waivers of lien was properly before the court and that all evidence indicated that the liens had been waived. Intervenors argue that the waivers of lien were not before the court, were not properly in evidence as to the intervenors and that the testimony elicited from Mr. McGregor by Bellamah's counsel was for the limited purpose of determining that Mr. McGregor had no first-hand knowledge concerning the claimed execution of the lien waivers. First, the waivers of lien issue was broached by intervenors and tried by implied consent during cross-examination, and thus Bellamah on redirect could pursue the issue. N.M.R.Civ.P. 15(b) [§ 21–1–1(15)(b), N.M.S.A.1953]; N.M.R.Evid. 103(a)(1) [§ 20–4–103(a)(1), N.M.S.A.1953 (Supp. 1975)]. Furthermore, the trial court allowed Exhibit J into evidence. The trial court's subsequent withdrawal from evidence of Exhibit J has no supporting rationale and we cannot determine one from the record. The use of Exhibit J for the limited purpose of the cross-examination of Mr. McGregor as argued above by intervenors is not reflected in the record and is a new argument on appeal, and thus must be rejected.

■ The conclusion we must reach from the fact that intervenors raised the issue of waivers of lien during cross-examination,

2. The waiver of lien had the following provisions:

Each of the undersigned, having supplied labor or materials on the above described job(s), hereby represents and acknowledges the following:

\* \* \* \* \* \*

(2) That we have been PAID IN FULL for all labor or material supplied by each of us on the above-described job(s).

(3) Each of us understands that Dale Bellamah Corp. the prime contractor has in its hands, funds due and owing to our employer, or the person who purchased material from us, and from which we could collect all sums due us on

the above-described job(s), if any sums were owed to us.

(4) That each of us hereby voluntarily releases the owner, the contractor, and the premises above-described, from any Mechanics' or Materialmens' lien which we had or may have had for labor or materials supplied to the above-described job(s) to date.

(5) Each of us understands that, as a result of these representations made by us, the prime contractor will disburse these funds to our employer, or the persons to whom we sold materials.

(6) Each of us have read the above before signing.

then failed to object to the testimony upon redirect until the end, is that the intervenors failed to object timely to the introduction of evidence as to the waivers of lien, and that the trial court improperly withdrew from evidence Exhibits J and K and ignored the uncontradicted testimony.

■ It is general policy to hear a case on the merits whenever the facts so permit. Even had Mr. Hollis objected timely, the trial court could have allowed the issue to be argued, if "the presentation of the merits of the action would have been subserved thereby." Rule 15(b), supra. Perhaps the trial court should have allowed a continuance if intervenors had shown surprise and the necessity of further research. *Dale J. Bellamah Corporation v. City of Santa Fe*, 88 N.M. 288, 291, 540 P.2d 218, 220 (1975).

■ Having determined the evidence is admissible, we must now determine whether the lien waivers are valid. Intervenors argue that (1) they in fact never received any funds (since Morris kept them); (2) they received no consideration for their waivers; and (3) they had to sign the waivers to get their paychecks. The general rule is that a party executing a lien waiver will not be heard to assert its invalidity as against an owner who has paid out money or otherwise changed his position to his detriment in reliance upon the waiver. *Mid-West Engineering & Const. Co. v. Campagna*, 397 S.W.2d 616 (Mo.1965). Thus, if Bellamah paid Morris the $14,850.95 in reliance upon the waivers of lien, intervenors essentially are estopped from asserting failure of consideration. There is substantial evidence that Bellamah did not disburse the funds until after it received the waivers.

■ With respect to the argument that intervenors could not receive their paychecks without first signing the waiver, the mechanics lien statutes were enacted to protect laborers and materialmen from such dealings. Here, the laborers could have refused to sign the waivers or put in a disclaimer as to those amounts they were unsure of having received (i. e. the fringe benefits). But by signing the waivers, the intervenors caused Bellamah to change its position (i. e. paying Morris their wages and fringe benefits). Bellamah in good faith turned the money over to Morris. Bellamah should not have to bear the costs of paying the fringe benefits twice. Intervenors' remedies lie against Morris.

D. Intervenors v. Morris

Since Morris kept the $14,850 Bellamah gave to him to pay into the fringe benefit fund, he will be liable to the intervenors for any deficiency arising after all payments and set-offs have been made herein.

E. Bellamah v. ABC

■ ABC issued two bonds on the construction project: a performance bond and a material-labor bond. The latter had a one year limitation period which had run before suit was filed. The former had a two year limitation period, which had not run at the time of the suit. The trial court found that ABC owed Bellamah $10,914.60 on the performance bond. There is substantial evidence to support this finding of the trial court. However, this sue should be held by Bellamah for intervenors, who shall receive a pro rata share thereof (based on each intervenor's fringe benefits).

F. ABC v. Morris

■ Under the surety contract Morris agreed to indemnify ABC for any amounts it had to expend to satisfy Bellamah on the construction contract. The trial court awarded ABC $10,914.60 plus $1,590.31 costs and attorney fees. There is substantial evidence to support this finding of the trial court.

G. Attorney fees

■ The trial court awarded Morris $3,663.63 in attorney fees and costs against Bellamah. In view of this decision this is reversed. Morris shall bear his own costs and attorney fees; Bellamah shall bear its own costs and attorney fees; Morris shall pay ABC costs and attorney fees; Morris shall also pay intervenors' costs and attorney fees. On appeal each party shall bear

its own costs and attorney fees, except for intervenors, who may recover their costs and attorney fees against Morris.

CONCLUSION

Bellamah shall pay Mesa Concrete, Springer Corporation, and Burke Concrete the stipulated amounts plus their attorney fees and costs. Bellamah shall pay the laborers' fringe benefit fund $331.28. Bellamah shall pay Morris, $2,892.74 less $109.20, or $2,783.54, but this amount shall be held by Morris and paid by him to the intervenors pro rata (based on their proportionate arrearages in the fringe benefit fund). ABC shall pay Bellamah $10,914.60, which amount shall be held by Bellamah and paid by it to the intervenors pro rata, again based on their proportionate arrearages. Morris shall indemnify ABC for the $10,-914.60 plus $1,590.31 costs and attorney fees. Morris shall also pay intervenors' costs and attorney fees on appeal.

PAYNE and FEDERICI, JJ., concur.