668 P.2d 891

**Vivian ARNOLD and Susan L. Cesare, Plaintiffs/Appellants,**

v.

**Joseph R. CESARE and Title Security Agency of Arizona, an Arizona corporation, as Trustee of Trust Nos. 402 and 403, Defendants/Appellees.**

No. 2 CA–CIV 4497.

Court of Appeals of Arizona, Division 2.

March 29, 1983.

Rehearing Denied May 17, 1983.

Review Denied July 6, 1983.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C. by Michael J. Meehan, Tucson, for plaintiffs/appellants.

Slutes, Browning, Sakrison & Grant, P.C. by William D. Browning, Tucson, for defendants/appellees.

## OPINION

HOWARD, Chief Judge.

This is a suit for declaratory judgment and for partition of real property. Appellants contend the trial court erred in refusing the admittance of certain evidence as being violative of the parol evidence rule and in not distributing certain of the realty

in kind rather than mandating a sale. We affirm.

Vivian Arnold is Susan Cesare's mother and Susan married Joseph Cesare in 1957. Vivian Arnold is a real estate broker as is Joseph Cesare. They formed a partnership to carry on a real estate business and various properties were acquired in the name of one or more of the parties to this suit.

In 1971 Joseph Cesare withdrew from the business with Vivian Arnold and started his own. This prompted litigation between the former partners with respect to the entitlement to various commissions earned on real estate transactions during the period before 1972. Between 1971 and 1977, other actions were commenced in Pima County Superior Court against Joseph Cesare and Vivian Arnold by John and Raymond Cardi, asserting claims against Vivian Arnold and Joseph Cesare and seeking ownership interest in some of the properties of the parties to this case.

In 1974 Joseph Cesare and Susan Cesare were getting a divorce. Because of all the pending litigation, their community assets were tied up in various claims and disputes at the time. They entered into a separation agreement which was ultimately approved by the court. Paragraph 32 of this agreement pertained to the community property as to which "various claims have been made." Such claims included those of Vivian Arnold involving the dissolution of the partnership as well as the Cardi claims. This paragraph stated in part:

"The parties agree that husband shall have the sole and exclusive right and authority to litigate, compromise, settle or otherwise resolve these various claims and disputes and wife does hereby appoint husband her special attorney in fact to take all such action and to execute any and all instruments on her behalf as may be necessary or convenient to litigate, compromise, settle or otherwise resolve these various claims and disputes as he, in his judgment, may deem fit and proper.

Except as is otherwise provided herein, the parties hereto agree to divide all property or monies ultimately distributed to them as a result of the resolution of the claims and litigation on an equal basis, 50% to wife and 50% to husband. *However, it is agreed that all legal fees and expenses incurred in connection with said claims and litigation shall be first deducted and paid prior to any 50%–50% distribution to husband and wife.* In addition, the parties further agree that if any taxes or expenses on said property in dispute is [sic] not paid as a result of any settlement or judgment in said litigation, that such taxes and expenses owing at the time of any such settlement or judgment shall also be first deducted and paid prior to any 50%–50% distribution to husband and wife." (Emphasis added)

Two years later, on March 15, 1976, Joseph and Susan entered into a stipulation regarding the original property settlement agreement in which the arrangement as to the payment of fees and division of proceeds was expressly reaffirmed. The only difference was that Joseph should account to Susan for the legal expenses and provide her with evidence of payment of the fees. He complied with the stipulation and sent Susan various receipts and statements of account.

The litigation surrounding the Cesare community assets continued in 1977 when Joseph Cesare, Vivian Arnold and the Cardis began to negotiate an agreement to compromise their differences. A settlement agreement was finally signed by Vivian Arnold, Susan Cesare, Joseph Cesare and the Cardis on May 3, 1977.

Paragraph 21 of the 1977 agreement states:

"The parties hereto all agree to be responsible for their own legal fees which may have been incurred in any of the aforesaid actions or otherwise and none of the parties herein shall have any obligation or responsibility to pay the legal fees of the other."

The 1977 agreement identified various real properties and called for the joint ownership of these properties to be placed in trust and then divided between the parties. In the case of property where one-half was to

go to Vivian Arnold, the remaining half was to be divided between Joseph and Susan in accordance with the community property provisions of the original property settlement agreement. Susan's one-fourth of the proceeds of the land sales was largely absorbed by the payment of legal fees and other joint obligations by Joseph in accordance with the parties' contractual agreement. Susan, upset by how things had turned out, sought this declaratory judgment, asking the court to establish her right to receive one-fourth of the land sale proceeds without any deductions for legal costs. Vivian Arnold joined as a plaintiff and also sought partition of certain parcels of real property jointly owned by the parties.

The trial court, sitting without a jury, concluded that the 1977 agreement was unambiguous and that Paragraph 21 allowed Joseph to offset the attorney's fees. The court allowed $66,026.85 as a proper offset for attorney's fees pursuant to the agreement between the parties, one-half of this amount chargeable to Susan's share in the sum of $33,013.42.

In addition, the trial court offset from Susan's share of the land sale proceeds the sum of $13,000, representing one-half of the distribution from the assets of the partnership. This distribution, in the amount of $26,000, had been recovered by Joseph as a community recovery and was used by him to pay joint obligations of the parties as was agreed to in their property settlement agreement.

Susan's share of the distributions would have been $35,400 but for the allowed offsets. The allowed offsets totaled $46,-013.42. After they were deducted from Susan's share, she was left with a deficit of $10,613.42. This was the amount the trial court awarded as judgment against Susan and in favor of Joseph, to be satisfied by trust disbursements to Joseph before Susan was entitled to her share of the distribution of the trust proceeds of certain land contracts. The trial court also ordered that four parcels of property be sold and the proceeds be divided between the parties to

this suit, 50 per cent to Vivian Arnold and 25 per cent each to Joseph and Susan. Appellants contended that the property known as the Deran property and the property consisting of 100 acres located at Los Reales Road should have been divided in kind rather than sold.

■ Appellants contend the trial court erred in rejecting an offer of proof and testimony which would have shown that Joseph told Susan before she executed the 1977 agreement that Paragraph 21 did not apply to her and that her share of the property recovered was not subject to any deduction for attorney's fees. We do not agree. There is no legal theory under which such testimony can be used to contradict a clear, unambiguous and specific provision.

■ There are three situations in which it is said that the parol evidence rule does not apply and that parol evidence is admissible: (1) To show that no contract was in fact made (e.g., because of nondelivery or conditional delivery), or that the contract is voidable for fraud, mistake, duress, undue influence, incapacity or illegality; (2) to demonstrate that the parties intended the writing to be only a partial integration of their agreement, thereby permitting the existence of contradictory collateral agreements to be proved, and (3) to assist in the interpretation of the contract, or to prove the usages and customs in relation to which the parties contracted, thus allowing the addition of consistent terms of performance or the definition of words used in the contract. *Pinnacle Peak Developers v. TRW Investment Corp.*, 129 Ariz. 385, 631 P.2d 540 (App.1980). There is nothing to interpret in the contract of May 1977. There is nothing that shows that the parties intended the writing to be only a partial integration of their agreement, and there was no evidence of mutual mistake of fact, duress, undue influence, incapacity or illegality. At most, the excluded testimony would have shown, according to appellants, that there was a misrepresentation. However, such evidence is not admissible in a situation such as this to cause the express terms

of the agreement to be read just the opposite. *Sun Lodge, Inc. v. Ramada Development Co.,* 124 Ariz. 540, 606 P.2d 30 (App. 1979). The agreement states that *all* parties are to pay their own legal fees. This provision is consistent with the property settlement agreement of Joseph and Susan which made Susan liable for her share of the attorney's fees. Appellants now want to make the agreement read that all parties except Susan are to pay their own attorney's fees. This is not like *Lusk Corporation v. Burgess,* 85 Ariz. 90, 332 P.2d 493 (1958). There, the agreement contained a provision stating that the writing covered all the agreements expressed or implied between the parties. The court held that in the case of fraud in the inducement, parol evidence could be admitted in spite of the general provision in the contract concerning prior agreements. Here we do not have an attack on such general contract language but, instead, an attempt to make a provision of a contract dealing with a specific subject matter to read just the opposite. *Sun Lodge* applies.

Appellants argue that the trial court should have reformed the May 1977 agreement based upon the fraudulent representations of Joseph Cesare. Since this remedy was not sought in the trial court, appellants have waived any right to assert the issue on appeal.

Appellants also argue that the trial court erred in charging Susan with the $13,000 of the distribution from the partnership because there was nothing that showed she ever received such distributions. Appellants' argument is misconceived since the record shows that the $26,000 from the partnership was used by Joseph Cesare to pay joint tax obligations of both Joseph and Susan. Therefore, Susan was in constructive receipt of her share.[1]

A.R.S. § 12–1218(B) states:

"If on the trial of the action, it appears to the court that fair partition of the property cannot be made without depreciating the value thereof, or that for any reason a sale is more beneficial to the parties or any of them, it shall in the first instance, enter a judgment directing that the real property be sold."

Appellants contend that as to the 27-acre parcel known as the Deran property and the 100-acre parcel in the proximity of Jeffrey and Los Reales roads, the court erred in not dividing it in kind. We do not agree. Joseph Cesare testified that the value of the 27 acres, which had frontage on both Camino de Oeste and the Tucson-Ajo Highway, would be destroyed if divided because it might prejudice a pending zoning application. Furthermore, it was his opinion that the value of the property would be diminished because most its value was in the east half which fronted on Camino de Oeste and the Tucson-Ajo Highway. This evidence showed that the property could not be partitioned in kind without depreciating its value.

As for the 100 acres, it was zoned for residential use. Because of a slope ordinance, residential units could be built on approximately 45 acres out of the 100. While the remaining acres could not be built upon, their area could be counted in aggregating the number of units that could be built on the 45 buildable acres. There was testimony that a great deal of engineering work would have to be done on all the property in order to properly divide the property. The trial court found that the parties were unable to deal with each other in their best interests, which was quite evident from the attitude of the parties towards each other at the trial. Furthermore, the trial court found that there was a problem with access to a portion of the property and that partition of the property would destroy the value of the whole.

The findings of the trial court relative to the 100 acres is supported by the evidence and falls within that part of A.R.S. § 12–1218(B) that states that the court can de-

---

1. Appellants raised another theory in their reply brief as to why the amount should not have been charged to Susan. It is improper to raise new issues in the reply brief. *Cathemer v. Hunter,* 27 Ariz.App. 780, 558 P.2d 975 (1976). We decline to consider the new issue.

cree a sale if for any reason a sale is more beneficial to the parties *or any of them.* The court was obviously of the opinion that there might be problems as far as getting the parties to cooperate in the division of property and in providing access to portions of it and it did not err in ordering the sale of the property.

Affirmed.

HATHAWAY and BIRDSALL, JJ., concur.