703 P.2d 566

**AMFAC DISTRIBUTION CORPORATION, a California corporation, dba Amfac Electric Supply Co., Plaintiff-Appellant, Cross Appellee,**

v.

**J.B. CONTRACTORS, INC., an Arizona corporation; Federal Insurance Company, a New Jersey corporation, Defendants-Appellees, Cross Appellants.**

**No. 1 CA–CIV 7924.**

Court of Appeals of Arizona,
Division 1, Department C.

July 5, 1985.

20

Allen, McClennen & Fels, P.C. by Timothy J. Tweeton, Phoenix, for plaintiff-appellant, cross appellee.

Norton, Burke, Berry & French, P.C. by Edward O. Burke and Annette K. Trainor, Phoenix, for defendants-appellees, cross appellants.

OPINION

EUBANK, Judge.

This appeal arises out of a suit brought by Amfac Distribution Corporation to foreclose its materialmen's liens for electrical materials and supplies used in the construction of the Southern Palms Shopping Center in Tempe, Arizona.

Hahn Devcorp, Inc., was the owner of the property on which the Southern Palms Shopping Center was being constructed. J.B. Contractors, Inc. was the general contractor on the project. Between April and June of 1981, J.B. Contractors entered into three subcontracts with SWL Electric Corporation for electrical work on three separate buildings or groups of buildings in the project distinguished hereinafter as the Southern Palms stores, the Boston Store, and Thrifty Drug Store. The payments from J.B. Contractors to SWL under these three subcontracts were to be respectively $285,775.70, $48,587.17, and $43,925.26. SWL in turn entered into verbal agreements with Amfac to obtain electrical materials and supplies for each of the three subcontracts. When Amfac began supplying materials to the project in July, 1981, it notified J.B. Contractors and the property owner that it was supplying materials and supplies to the project by sending them preliminary lien notices as required by A.R.S. § 33–992.01 as a prerequisite to filing materialmen's liens.

In September, 1981, J.B. Contractors became concerned that SWL was not properly performing its subcontracts, including failing to pay its suppliers. At that time J.B. Contractors' president issued instructions to his accounting staff that no further checks go to SWL for monthly progress payments until J.B. Contractors received lien waivers in full from SWL and its suppliers. Accordingly, J.B. Contractors released the October progress payment to SWL on October 22, 1981, only after it had received lien waivers from both SWL and Amfac which waived all claims incurred through that date. Again in November, J.B. Contractors released payment to SWL on November 24, 1981, only after both

SWL and Amfac signed lien waivers which waived all claims incurred through that date. Soon afterward, J.B. Contractors removed SWL from the project for breach of contract and hired replacements to finish the three phases of the project. At the time of its removal, SWL had been paid the following amounts by J.B. Contractors under the subcontracts: $245,607.25 for Southern Palms, $41,530.00 for the Boston Store, and $37,886.13 for Thrifty Drug. SWL's payments to Amfac for materials and supplies had been $151,089.67 broken down as follows: $115,781.80 for Southern Palms, $18,374.61 for the Boston Store, and $16,933.26 for Thrifty Drug.

On January 12, 1982, Amfac recorded three notices and claim of liens for materials supplied to the project for which it had not received payment:

| | |
|---|---|
| Southern Palms | $131,017.18 |
| Boston Store | 23,136.00 |
| Thrifty Drug | 21,785.58 |
| TOTAL | $175,938.76 |

Of these claims, only small amounts were attributable to materials furnished after November 24, 1981, the date when Amfac's last three lien waivers were signed:

| | |
|---|---|
| Southern Palms | $1,117.69 |
| Boston Store | 40.40 |
| Thrifty Drug | 7,634.50 |
| TOTAL | $8,792.59 |

After Amfac's liens were recorded, J.B. Contractors recorded three statutory discharge of lien bonds issued by Federal Insurance Company for one and one-half times the amount of the liens pursuant to A.R.S. § 33–1004.

On July 8, 1982, Amfac filed suit against Hahn Devcorp, Inc.; J.B. Contractors, Inc.; Federal Insurance Company; and various other defendants having an interest in the Southern Palms property to foreclose its liens or to collect against the lien discharge bonds. Soon after suit was filed, J.B. Contractors and Federal Insurance Company made an offer of judgment to Amfac of $9,175.14 which was not accepted. J.B. Contractors and Federal Insurance Company then filed a motion for partial summary

judgment requesting that Amfac's recovery be limited to $8,792.59, the cost of the materials furnished by Amfac after November 24, 1981, the date of the last lien waivers submitted by Amfac for each of the three parts of the project. The trial court agreed that the lien waivers limited Amfac's recovery, but ruled that they did so only to the extent that J.B. Contractors had paid SWL for the items for which Amfac was making its claims. J.B. Contractors then furnished proof that it had paid SWL or the other subcontractors who finished the projects all monies due under the subcontracts except for $39,353.39.

Thereafter, Amfac moved for summary judgment and the trial court, in ruling on the cross-motions for summary judgment before it, entered formal judgment in the amount of $30,873.39 [1] against J.B. Contractors and Federal Insurance Company and dismissed all remaining claims. Both parties appeal from the judgment.

The lien waivers executed and delivered by Amfac on November 24, 1981 for each of the three phases of the project were all in essentially the same general form and language. The lien releases for materials supplied to the Thrifty Drug Store, for example, provided as follows:

WAIVER OF LIEN

FOR LABOR AND/OR MATERIALS

November 24 , 19 81

KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, the undersigned Claude G. Moore of Phoenix , Arizona, is an authorized representative of Amfac Electric Supply under a verbal agreement to furnish materials for the construction project known as Southern Palms Center, Thrifty .

NOW, THEREFORE, BE IT KNOWN that the undersigned, for and in consideration of $ 16,933.26 , and other good and valuable considerations, receipt of which is hereby acknowledged, does hereby waive and release any and all lien, claim or right of lien on the above described building and premises on account of labor or materials, or both, furnished to date by the undersigned pursuant to the aforesaid agreement for said building and/or premises.

INV. # AMOUNT Dated this 24 day of November , 19 81 see
attached invoices

Claude G. Moore

Title: District Credit Manager

Subscribed and sworn to before me this 24 day of November , 19 81 .

Dorothy Groeneveld<br>Notary Public

---

The only differences between this lien release and those executed the same date concerning materials supplied for the other two buildings were the amount of consideration recited and the words typed at the bottom of the form under the heading

1. The full amount left unpaid to SWL under the subcontracts after all changes had been incorporated was $39,353.39 from which the trial court allowed offsets of $6,500.00 for J.B. Contractors' attorney's fees and costs in defending suits arising out of the SWL contracts and $1,980.00 for J.B. Contractors' costs for the statutory discharge of lien bonds. The amount of the judgment was thereby reduced to $30,873.39. J.B. Contractors' contracts with SWL provided for it to receive attorney's fees and costs incurred through default of SWL.

showing *"Inv. # Amount."* On the lien release for Thrifty Drug, the words "see attached invoices" had been typed. The lien release for the Boston Store contained the words "see attached sheets" and that for Southern Palms stated "see attached check." It is undisputed that no invoices, sheets, or check were in fact attached to the lien waivers when they were delivered to J.B. Contractors by SWL in return for SWL's November progress payment, but that if they had been, this information would have shown what amount SWL was paying to Amfac out of the check it received from J.B. Contractors and the particular invoices it was paying.

Amfac argues that the trial court erred in determining as a matter of law that the lien waivers executed by Amfac on November 24, 1981, bar its claim for materialmen's lien for all materials supplied prior to that date. Amfac contends that in signing the lien waivers of November 24, 1981, it intended only to surrender its lien rights to the extent of the payments made to it, but not to waive its right to liens for materials supplied before those dates for which it had not yet been paid. Amfac argues that the reference on the lien waivers to "see attached invoices," "see attached check," and "see attached sheets" creates an ambiguity as to whether the lien waivers were intended to be partial waivers rather than full waivers and therefore precluded the trial court from granting summary judgment.

 As Amfac points out, summary judgment should not be granted where there is a genuine disputed issue of material fact or even the slightest doubt as to the facts. *Granite State Insurance Corporation v. Mountain States Telephone and Telegraph Company*, 117 Ariz. 432, 573 P.2d 506 (App.1977). A reviewing court must view the facts and all reasonable inferences therefrom in a light most favorable to the party opposing the motion for summary judgment. *Grain Dealers Mutual Insurance Company v. James*, 118 Ariz. 116, 575 P.2d 315 (1978). The defend-

ants, however, correctly observe that the interpretation of a contract is a question of law for the court and where the language of a contract is clear and unambiguous it must be given effect as it is written. *Hadley v. Southwest Properties, Inc.*, 116 Ariz. 503, 570 P.2d 190 (1977). Whether a contract is ambiguous or not is also a question of law. *University Realty & Development Company v. Omid-Gaf, Inc.*, 19 Ariz.App. 488, 508 P.2d 747 (1973). There is no fact question for the trier of fact to decide if the court determines that the lien waivers are unambiguous. Defendants' contention in this case is that the lien waivers unambiguously waived all lien rights Amfac would have had for materials supplied prior to November 24, 1981, whether or not Amfac was ever paid for the materials by SWL. We agree and uphold the trial court's ruling that the lien waivers are unambiguous.

Defendants-appellees have cited us to the case of *Country Service and Supply Company v. Harris Trust and Savings Bank*, 103 Ill.App.3d 161, 58 Ill.Dec. 599, 430 N.E.2d 631 (1981) which contains facts and an issue nearly identical to that found in this case. In *Country Service* the lien claimant had executed a lien waiver which purported to release all claim or right of lien for "labor or services, material, fixtures or apparatus heretofore furnished to this date by [Country Service] for the above described premises." Also printed on the lien waiver form was a "payout order" indicating the payment amount being made for the work completed and showing the balance due to be paid. A question arose whether the lien claimant Country Service was barred from claiming a mechanic's lien for work performed prior to April 18, 1975, the date of the last "waiver of lien to date." Country Service argued that in signing the waivers it had intended to surrender its lien rights only to the extent of the payments made to it and to preserve its right to a lien for work performed before those dates, but not yet billed. Country Service argued that the payout orders and lien waiver forms when read together were ambiguous and that

extrinsic evidence of the parties' intent and custom in the trade with respect to the documents should be considered to determine the scope of the lien waivers. In finding no ambiguity in the waivers, the court stated:

> We do not agree that the lien waivers executed by Country Service may realistically be considered ambiguous. Each of them states in clear, express language that they release and waive any mechanic's lien or right to such lien against the subject premises due or to become due from the owner on account of labor, material or services heretofore *furnished to this date* by Country Service. Nor does reference to the separate form designated as a payout order lend weight to Country Service's argument by limiting application of the lien waivers to the payment made when each were submitted. At most, the statement of account on the payout forms simply provides a review of the status of the contract between Country Service and the contractor, Malone. It does not suggest the designated "balance" was for work actually performed under the contract for which Country Service was then entitled to payment nor does it provide by its terms for a reservation of lien rights contrary to the express terms of the lien waivers. The construction urged by Country Service is unacceptable in light of the explicit terms of lien waiver forms tendered by it for payment. (Emphasis in original).

430 N.E.2d at 635. The court stressed that if the lien claimant had meant to reserve its lien rights as to amounts for which it had not been paid, it should have put appropriate language to that effect in the waiver. Its mere showing of a balance was insufficient. The court found no basis for considering affidavits of the parties regarding their intent or custom in use of the lien waiver forms.

We find that the Illinois court's reasoning in *Country Service* applies with equal force to the situation found in this case. The lien waivers executed in this case clearly state that Amfac waived and released "any and all lien, claim or right of lien on the above described building and premises on account of labor or materials, or both, furnished to date." Nothing in the words printed at the bottom of the waiver forms concerning attached "invoices, sheets, or check" detracts from the wording of the lien release that "any and all" liens for materials furnished to date were being released. Even if the "invoices, sheets or check" had been attached to the waiver form, they would have merely shown what Amfac was being paid by SWL but would not have indicated that Amfac was reserving any right to assert its lien rights for materials supplied prior to the date of the lien waiver for which it had not been paid. The deposition of Claude Moore, Amfac's district credit manager, indicates that he was concerned that the waiver forms might be misinterpreted as a waiver in full for all materials supplied prior to the date of the lien waiver. Mr. Moore's concerns about the form avail Amfac of nothing in light of his failure to insert words in the waiver form which would have clearly reserved lien rights contrary to the express terms of the lien waivers. Amfac also points out that there was often a 30- to 60-day delay between the time it billed SWL and its receipt of payment from SWL since SWL waited for payment from J.B. Contractors before paying Amfac. Amfac argues that it is unfair that Amfac should be bound to the date in the waiver when Amfac's billing of SWL was always so far behind. Again, the simple solution would have been for Amfac to more carefully draft the lien waiver to show the proper date from which the lien waiver was to be effective.

Other cases cited to us by the parties provide additional confirmation that the trial court correctly decided that the waivers executed in this case were waivers in full rather than partial waivers. In *Mountain Stone Company v. H.W. Hammond Company*, 39 Colo.App. 58, 564 P.2d 958 (1977) a lien claimant executed a lien release purporting to release "any and all claims thereon through January 16, 1975." In

finding that the lien claimant had intended a full release the trial court stated:

> Like other contracts, the obvious meaning of the provisions of a release must be given effect. *Hyzak v. Greybar*, 36 Colo.App. 164, 537 P.2d 1089 (1975). The terms " '[a]ny' and 'all' have been described as the most comprehensive words in the English language." *See North v. Hawkinson*, 324 S.W.2d 733 (Mo.1959) (Storckman, J., concurring). Thus, the provision of the release whereby lien claimants "release any and all claims" on the project "Chili Pepper" encompassed their mechanics' lien rights. If the intent of lien claimants were otherwise, it was incumbent upon them to insert appropriate language limiting the scope of the release. *See Goff v. Boma Investment Co.*, 116 Colo. 359, 181 P.2d 459 (1947).

564 P.2d at 961.

In *George M. Morris Construction Company v. Four Seasons Motor Inn, Inc.*, 90 N.M. 654, 567 P.2d 965 (1977), where a lien claimant executed lien waivers even though it had not received full payment, the court found that the lien claimant was nevertheless barred from asserting its lien since it had caused the owner of the property to change its position in reliance on the waiver. As the court stated:

> Here, the laborers could have refused to sign the waivers or put in a disclaimer as to those amounts they were unsure of having received (i.e. the fringe benefits). But by signing the waivers, the intervenors caused Bellamah to change its position (i.e. paying Morris their wages and fringe benefits).

567 P.2d at 969.

In *Holbrook v. Webster's, Inc.*, 7 Utah 2d 148, 320 P.2d 661 (1958), a lien claimant released "any lien or right to lien." Thereafter the lien claimant claimed that he had really intended to release the property only insofar as he had received payment for the labor or materials supplied. The court refused to consider his testimony ruling that the unambiguous language of the lien waiver had to be given effect as written:

> We are of the opinion that no genuine issue of fact is presented by the Lien Release. The only issue is one of law. It does not lie in the mouth of appellant to say that he was mistaken in the legal effect of the release or that he did not intend that it should be given the only legal effect of which it is susceptible.

320 P.2d at 663.

Additionally, Amfac argues that an ambiguity exists in the lien waivers because they state that they are based on a verbal agreement with SWL of which J.B. Contractors admitted it had no knowledge of the particular details of the agreement. We agree with the defendants that this argument deserves short shrift. The defendants in requiring lien waivers from Amfac before paying SWL were concerned only in obtaining full waivers. They had no reason to be concerned with the details of the agreement between Amfac and SWL as long as Amfac would sign a waiver releasing all lien rights through the date of the waiver. Reference to the verbal agreement between Amfac and SWL simply creates no ambiguity.

Finally, Amfac argues it should not be precluded from foreclosing liens for materials supplied before November 24, 1981, for which it had received no payment because J.B. Contractors did not rely on the three lien waivers or had no right to rely on them. Amfac points out that the date on the checks to SWL was approximately two weeks earlier than the date of the lien waivers. We do not find that the earlier date on the checks creates a fact issue of whether J.B. Contractors relied on the lien waivers in paying SWL. While the president of J.B. Contractors admitted that its checks were written prior to the time it received the lien waivers, he stated positively that the checks were not delivered to SWL and would not have been delivered until the lien waivers were received. Amfac was not able to contradict this fact. Therefore, we find no factual dispute as to whether J.B. Contractors relied on the waivers in releasing payment to SWL.

Amfac argues that J.B. Contractors had no right to rely on the waivers without attempting to learn what the sheets, invoices, and checks mentioned on the waivers referred to. We have already stated that if the invoices, sheets or checks had been attached to the waivers, there was nothing about them which would have prevented the waivers from being effective as complete waivers. Therefore, Amfac's argument that J.B. Contractors had no right to rely on the waivers must fail.

For all of the reasons stated herein, we find that the trial court correctly ruled as a matter of law that the lien waivers executed on November 24, 1981, barred Amfac's claims for materials supplied prior to that date, at least to the extent that J.B. Contractors had paid SWL or the successor subcontracts the full subcontract price.

We now turn to the cross-appeal in which the defendants-appellees argue that the trial court should have limited Amfac's recovery to $8,792.59, the cost of the material it supplied after November 24, 1981. The defendants-appellees argue that it was error for the trial court, instead, to award $30,873.39 to Amfac, representing the portion of J.B. Contractors' subcontracts with SWL which had not been paid to SWL or to the subcontractors who finished after SWL had been removed. The defendants-appellees attack the portion of the judgment totaling $22,080.80 which is the amount in excess of the cost of materials supplied after November 24, 1981. In making their attack, the defendants-appellees argue only that since Amfac did not enter into a contract with J.B. Contractors, it cannot have any personal liability to Amfac which does not stem from Amfac's lien rights. This appears to be a correct statement of the law according to *Keefer v. Lavender*, 74 Ariz. 24, 243 P.2d 457 (1952). This argument, however, does not assist the defendants-appellees because we conclude that the trial court's ruling that Amfac have judgment for $30,873.39 actually stemmed from Amfac's lien rights. The trial court determined that Amfac was entitled to said amount by reasoning that Amfac's lien waivers did not bar it from asserting its lien rights to the extent that J.B. Contractors was unjustly enriched by receiving materials under the subcontract with SWL for which it had made no payment. The trial court's ruling was clearly one based on equitable principles. *See Costanzo v. Stewart*, 9 Ariz.App. 430, 453 P.2d 526 (1969). Although we have been cited to no case precisely on point, we find the suggestion in some of the cases cited by the parties that lien waivers are valid only to the extent that they cause other parties to rely to their detriment on them. For example, in *Mountain Stone Company v. H.W. Hammond Company*, 564 P.2d 958, 960 (Colo.App.1977), the court found the lien claimants estopped to assert lien rights because the landowners had relied upon the lien releases in making payments to the contractors. Similarly, in *George M. Morris Construction Co. v. Four Seasons Motor Inn, Inc.*, 90 N.M. 654, 567 P.2d 965, 969 (1977), the court stated that a party executing a lien waiver will not be heard to assert its invalidity against an owner who has changed his position to his detriment in reliance upon the waiver.

J.B. Contractors relied to its detriment on the waivers only to the extent that it paid out money owed under the subcontracts with SWL. We therefore find no error in the trial court's conclusion that the lien waivers should not be given effect to the extent that they allow J.B. Contractors to receive a windfall at Amfac's expense. However, we do find that a factual dispute was shown by the record as to whether J.B. Contractors in fact was being unjustly enriched. J.B. Contractors revealed in the trial court that various third parties were also laying claim to the monies that had not been paid to SWL under the subcontracts, including the Internal Revenue Service. In view of the fact that a question of material fact exists on this issue, we find that summary judgment was not proper and that this portion of the case should be returned to the trial court for a factual determination of whether the defendants have had to

pay any of the money owing under the SWL subcontracts, above the $8,792.59 amount, to other creditors of the defendants.

 We also note that Amfac, in reply to the defendants-appellees' argument on the cross-appeal that the judgment should have been held to $8,792.59, claims that the trial court should have granted the full $39,353.39 instead of allowing the offsets which lowered the judgment to $30,873.39. Amfac's argument is one which would increase its award and therefore should have been made, if at all, in its opening brief. Amfac did not make this argument in its opening brief and is therefore precluded from raising it for the first time in its reply brief. It is improper to raise new issues in the reply brief. *Arnold v. Cesare*, 137 Ariz. 48, 668 P.2d 891 (App.1983).

Defendants-appellees J.B. Contractors and Federal Insurance Company have requested attorney's fees from this court pursuant to A.R.S. § 12-341.01 which allows the successful party in an action arising out of contract to be awarded reasonable attorney's fees. Since the appellees have succeeded on appeal only in part and the rest of the case has been remanded to the trial court, any award of attorney's fees should await the trial court's determination as to that portion of the case so that the ultimately successful party can be determined. Similarly, appellees' request for costs accrued after their submission of an offer of judgment for $9,175.14 pursuant to Rule 68 of Arizona Rules of Civil Procedure must await the trial court's determination after remand when it will be known whether the judgment entered will be less than the amount of the offer of judgment.

The judgment of the trial court is affirmed in part and reversed and remanded in part for proceedings not inconsistent with this decision.

CORCORAN, P.J., and KLEINSCHMIDT, J., concur.